UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRYSTAL VASQUEZ, MARIA de PILAR ESPINOZA VERA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    -against-<br><br>STAFF SUPPORT TEAM, MACK MANAGEMENT GROUP LLC, MACK CAT LABOR, ROBERT MACK,<br><br>    Defendants. | Case No.:  1:22-cv-3468<br><br>CLASS AND COLLECTIVE ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Krystal Vasquez and Maria de Pilar Espinoza Vera, individually and on behalf of all others similarly situated, by and through their undersigned attorneys, allege as follows:

## NATURE OF ACTION

1.    Plaintiffs bring this action on behalf of themselves and other similarly situated individuals employed as subway cleaners by Defendants in New York City.

2.    Plaintiff Vasquez contend that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, by knowingly requiring, suffering, or permitting her and other members of the putative FLSA Collective ("Collective Members") to work more than 40 hours per week without properly paying them overtime wages.

3.    Plaintiffs also bring this action on behalf of themselves and all similarly situated subway cleaners employed by Defendants in New York City as a class action under Federal Rule of Civil Procedure 23 to remedy the following violations of the New York Labor Law ("NYLL"):

   a.    Failure to provide wage notices and wage statements as required by the New York Wage Theft Prevention Act, NYLL § 195, and supporting regulations

   b.    Failure to provide paid sick leave as required by the New York State Paid Sick Leave Law, NYLL § 196-b, and supporting regulations.

4.     Plaintiffs also bring this action on behalf of themselves and all similarly situated subway cleaners employed by Defendants in New York City as a class action under Federal Rule of Civil Procedure 23 to recover unpaid prevailing wages, daily overtime, and supplemental benefits that they and the members of the putative class were entitled to receive for work that they performed under contracts entered into between Defendants and the Metropolitan Transit Authority and/or New York City Transit Authority (collectively "MTA").

5.     Plaintiff Vasquez also brings this action on behalf of herself, contending that Defendants violated NYLL § 215 by reducing her hours as retaliation after she complained about Defendants' unlawful practices.

**PARTIES**

## I.     Plaintiffs

### Krystal Vasquez

6.     Individual and Representative Plaintiff Krystal Vasquez is an adult individual residing in Brooklyn and is a citizen of the state of New York. She was employed by Defendants as a subway cleaner from on or about May 1, 2021, until on or about December 20, 2021.

### Maria de Pilar Espinoza Vera

7.     Individual and Representative Plaintiff Maria de Pilar Espinoza Vera is an adult individual residing in Brooklyn and is a citizen of the state of New York. She was employed by Defendants as a subway cleaner from in or about September 2021 until on or about December 23, 2021.

## II.    Defendants

### Staff Support Team LLC

8.     At all relevant times, Defendant Staff Support Team LLC has been and continues to be an employer engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

9.     Upon information and belief, Defendant Staff Support Team is, and at all relevant times was, a staffing/placement agency that provided staffing services, including contracting with the MTA to provide subway cleaning services.

10.     Upon information and belief, at all relevant times, Defendant Staff Support Team had gross revenues in excess of $500,000.00.

11.     Upon information and belief, Defendant Staff Support Team is a Texas corporation with its headquarters and principal place of business in Dallas, Texas.

12.     At all relevant times, Defendant Staff Support Team has been and continues to be an employer under NYLL § 190.

13.     At all relevant times, Defendant Staff Support Team employed or continued to employ Plaintiffs and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL.

14.     The actions and omissions described in this complaint were made by Defendant Staff Support Team directly or through its supervisory employees and agents.

**Mack Management Group LLC, Mack Cat Labor, Robert Mack**

15.     Upon information and belief, Defendant Mack Management Group LLC ("Mack Management") is an active New Jersey corporation with headquarters and its principal place of business located in Ringwood, New Jersey.

16.     Upon information and belief, Defendant Mack Cat Labor ("Mack Cat") is an active New Jersey corporation with its headquarters and its principal place of business located in Ringwood, New Jersey.

17.     At all relevant times, Defendants Mack Management and Mack Cat have been and continue to be employers engaged in interstate commerce or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

18.    Upon information and belief, at all relevant times Defendants Mack Management and Mack Cat had gross revenues in excess of $500,000.00.

19.    Upon information and belief, Defendant Mack Management and Mack Cat are and at all relevant times were, staffing/placement agencies that provide staffing services, including contracting with the MTA to provide subway cleaning services.

20.    Upon information and belief, Defendant Robert Mack is the Chief Executive Officer and Registered Agent of Mack Management and of Mack Cat.

21.    Upon information and belief, Defendant Robert Mack resides in and is a citizen of New Jersey.

22.    Upon information and belief, Defendant Robert Mack is the founder and the owner and operator of Mack Management and Mack Cat.

23.    Upon information and belief, Defendant Robert Mack is, and was at all relevant times, responsible for controlling the operations of Mack Management and Mack Cat, including setting Mack Management's and Mack Cat's payroll and scheduling policies (including the unlawful practices complained of here), and is otherwise in charge of running the day-to-day operations of the business of Mack Management and Mack Cat.

24.    According to Robert Mack's LinkedIn profile, he is "[d]irectly responsible for the overall operations and sales management for a multi million dollar regional staffing agency that employs a workface of over 1500 full and part time employees on an annual basis through-out three states." His "responsibilities also include but are not limited to the overall management of all accounting and financial functions as well as all marketing, business development, advertising and social media campaigns for 4 independent staffing divisions."

25.    Defendant Robert Mack participated in the day-to-day operations of Mack Management and Mack Cat and acted intentionally and maliciously in his direction and control of Plaintiffs and other similarly situated employees and is an "employer" under NYLL and relevant regulations and is jointly and severally liable with Defendants Mack Management and Mack Cat.

26.     At all relevant times, Defendants Mack Management, Mack Cat, and Robert Mack (the "Mack Defendants") employed or continued to employ Plaintiffs and each collective and class member within the meaning of the FLSA, 29 U.S.C. § 203(d).

27.     All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

## JURISDICTION AND VENUE

28.     This court has subject matter jurisdiction over this matter under 29 U.S.C. § 216(b) (FLSA actions "may be maintained against any employer … in any Federal or State court of competent jurisdiction"), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…"). The court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the parties are residents of different states. The court has jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

29.     The claims under New York law are so closely related to the FLSA claims that they form part of the same case or controversy under Article III of the United States Constitution.

30.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

31.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## COLLECTIVE ACTION ALLEGATIONS

32.     Plaintiff Vasquez brings her first cause of action as a collective action for herself and all others similarly situated to recover unpaid overtime wages, liquidated damages, and other damages related to Defendants' violation of the FLSA.

33.     Plaintiff Vasquez pursues the requested relief on behalf of the following collective:

All persons employed by Defendants at any time three years before the filing of this Complaint and through the entry of judgment in this case (the "Collective Action Period") who worked in New York City as subway cleaners and earned, but were not paid, FLSA overtime premiums for hours worked over 40 in a work week (the "Collective Members").

34.    A collective action is appropriate because Plaintiff Vasquez and the Collective Members are similarly situated, in that they were all subjected to Defendants' illegal policies, including its policy of failing to pay overtime premiums at the proper rate for work performed in excess of 40 hours each week. As a result of this policy, Plaintiff Vasquez and the Collective Members did not receive the legally required overtime premium payments for all hours worked in excess of 40 hours per week.

35.    Plaintiff Vasquez and the Collective Members have substantially similar, if not identical, job duties and are or were paid based on a similar, if not identical, payment structure.

36.    Specifically, even though Plaintiff Vasquez did not satisfy any test for exemption, Defendants engaged in a common scheme requiring, suffering, or permitting Plaintiff Vasquez and the Collective Members to work overtime and failed to pay Plaintiff Vasquez and Collective Members appropriate overtime premiums.

37.    Plaintiff Vasquez and the Collective Members were hired by Defendants and assigned to work as subway cleaners for the MTA.

38.    Defendants required Plaintiff Vasquez and the Collective Members to follow their policies, practices, and directives for cleaning. Defendants retained the right to terminate subway cleaners' employment at any time. Defendants could terminate a subway cleaner, for example, if the cleaner behaved in a way that Defendants believed was inappropriate or had violated one of Defendants' rules or standards.

39.    Defendants controlled the work schedules that Plaintiff Vasquez and the Collective Members worked.

40.    Plaintiff Vasquez and Collective Members were all hourly paid employees.

41.    Defendants set the rates and method of pay applicable to Plaintiff Vasquez and the Collective Members.

42.    Defendants required, suffered, or permitted Plaintiff Vasquez and the Collective Members to work over forty hours per week without proper overtime pay.

43.    Defendants did not pay Plaintiff Vasquez and the Collective Members an overtime premium of 1½ times their legally required hourly rate for all time worked in excess of 40 hours per week.

44.    Defendants maintained common timekeeping systems and policies with respect to Plaintiff Vasquez and the Collective Members.

45.    Plaintiff Vasquez estimates that the Collective, including both current and former employees over the relevant period, will include at least 40 members. The precise number of Collective Members should be readily available from Defendants' records, including personnel, scheduling, and time records, and from input received from the Collective Members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Collective, its members may be informed of the pendency of this action directly by U.S. mail and electronic mail.

46.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CLASS ACTION ALLEGATIONS

47.    Under the New York Labor Law and the New York common law, Plaintiffs bring their Second through Fifth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time six years before the filing of this Complaint through the entry of judgment in this case (the Class Period") who worked for Defendants in New York City as subway cleaners (the "Class Members") who earned but were not paid wages, including daily overtime wages, at the applicable prevailing wage rates, were paid less than the rates Defendants were contractually obligated to pay, did not receive the wage notices and wage statements

required by New York law, did not receive notices of their rights to prevailing wages and sick pay, and were not provided with sick pay.

48.     The number and identity of the Class Members can be determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Rule 23.

49.     The Class Members are so numerous that joinder of all members is impracticable. Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants. Upon information and belief, there are at least 40 Class Members.

50.     Common questions of law and fact exist as to all Class Members, and such questions predominate over any questions solely affecting individual Class Members.

51.     Common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include:

a.   whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL

b.   whether Defendants failed to keep accurate time records for all hours worked by Plaintiffs and the Class Members

c.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates

d.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, overtime hours at the prevailing wage overtime rates for all hours worked in excess of 40 hours per workweek or eight hours per day on prevailing wage projects

e.   whether Defendants breached contracts with local or state governmental entities by failing to pay Plaintiffs and the Class Members supplemental benefits on

prevailing wage jobs as required by the New York City and New York State prevailing wage schedules

f.   whether Defendants were unjustly enriched by failing to pay Plaintiffs and the Class Members at prevailing wage rates on prevailing wage jobs

g.   whether Defendants failed to provide Plaintiffs and Class Members with proper wage notices and wage statements

h.   whether Defendants failed to provide Plaintiffs and the Class Members with paid sick leave

i.   whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

j.   the nature and extent of classwide injury and the measure of damages for those injuries.

52.   Plaintiffs' claims are typical of the Class Members' claims.

53.   Plaintiffs, like all Class Members, worked for Defendants in New York City as subway cleaners and their work was performed in accordance with Defendants' corporate policies. Plaintiffs, like all Class Members, were, among other things, not paid prevailing wages, supplemental benefits, or daily/weekly overtime prevailing wages for work performed under contracts with the MTA; not provided with proper wage notice and wage statements; and not provided with paid sick leave. If Defendants are liable to Plaintiffs for the Class claims enumerated in this Complaint, they are also liable to all Class Members.

54.   Plaintiffs and their counsel will fairly and adequately represent the class.

55.   There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own damages.

56.   Plaintiffs' counsel are experienced class action litigators who are well prepared to represent the interests of the Class Members.

57.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where an individual plaintiff may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

58.     The Individual Plaintiffs and Class Members lack the financial resources to vigorously prosecute a lawsuit in federal court against the Defendants. Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action. although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## FACTUAL ALLEGATIONS

59.     Defendants hired Plaintiffs and the Collective Action Members and Class Members to work as subway cleaners at various MTA work sites in New York City.

60.     At all relevant times, Plaintiffs performed subway cleaning work for Defendants at various MTA work sites in New York City.

## I.     The Transit Authority Contracts

61.     At all relevant times, Defendants have been in the staffing business, including hiring and managing individuals to work on cleaning projects.

62.     In or about March 2020, as part of its response to the coronavirus pandemic, the MTA implemented "aggressive cleaning and disinfection programs for the safety of [its] riders and employees." In some of its programs, "including cleaning and disinfecting subway cars and high touch points in stations," it "partnered with third-party contractors." See Contractors for

cleaning and disinfecting during the coronavirus pandemic,

https://new.mta.info/coronavirus/cleaning/contractors.

63.     Upon information and belief, Defendants were among the entities that entered into contracts (the "Transit Authority Contracts") with the MTA, as either prime contractors or subcontractors, to furnish labor, material, and equipment to clean and disinfect subway cars and high touch points in stations ("subway cleaning work").

64.     Under Article 9 of the New York Labor Law, as a matter of fact or by operation of law, the Transit Authority Contracts obligated Defendants to pay Plaintiffs and all other similarly situated employees at or above the applicable local prevailing wage rates, including any required supplemental benefits and overtime premiums.

65.     New York Labor Law § 231 provides that the wages to be paid to building service workers shall be not less that "the prevailing wage in the locality for the craft, trade or occupation of the service employee."

66.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to Plaintiff and all other similarly situated employees should have been annexed to and formed a part of the Transit Authority Contracts. If not annexed to the Transit Authority Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and public policy.

67.     The Transit Authority Contracts also provided, as a matter of fact or by operation of law, that any subcontracts that any contractor entered into contain language requiring the payment of prevailing wages and supplements to all workers furnishing labor at the MTA sites.

68.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Transit Authority Contracts was made for the benefit of all workers furnishing labor for one or more public agencies, and those workers are the beneficiaries of that promise and the contracts entered into between Defendants and government agencies.

69.     As employees of Defendants who were assigned to work on Defendants' publicly financed projects, Plaintiffs were intended third-party beneficiaries of the Transit Authority Contracts.

70.     In accordance with the Transit Authority Contracts, Plaintiffs performed subway cleaning work at MTA sites.

71.     Upon information and belief, Defendants willfully failed to pay Plaintiffs the prevailing rates and supplements to which they were entitled.

72.     Upon information and belief, Defendants willfully failed to pay Plaintiff Vasquez and the Collective Members overtime pay at 1 ½ times the lawful prevailing wage rate to which they were entitled, in violation of the FLSA.

73.     Defendants' failure to pay Plaintiffs proper prevailing wage rates, supplemental benefits, and overtime premiums calculated based on prevailing wage rates were corporate policies that also applied to all of Defendants' other similarly situated employees.

74.     On May 18, 2020, New York City Comptroller Scott Stringer issued a letter to Patrick Foye, Chairman and CEO of the MTA, stating that the New York City Transit Authority had contracted with private companies to perform subway cleaning work, but that these private companies were not paying their employees prevailing wages and benefits, as required by the New York Labor Law. The Comptroller determined that building service prevailing wage rates under NYLL Article 9 apply to these workers, and that the applicable prevailing wage classification is Building Cleaner and Maintainer (Office) Cleaner/Porter.

75.     On March 31, 2021, Stringer again issued a letter to the MTA chairman, stating that the New York City Transit Authority had contracted with private companies to perform subway cleaning work, but that these private companies still were not paying their employees prevailing wages and benefits, as required by the New York Labor Law.

## II.   Plaintiff Krystal Vasquez's work for Defendants

76.   Plaintiff Krystal Vasquez began working as a subway cleaner in or around July 29, 2020. She was sent a link for electronic paperwork at the time from an entity called "A+ Staffing," stating that she was an "independent contractor." Defendant Robert Mack was copied on the paperwork. Among other things, the electronic paperwork stated that Vasquez would provide "Commercial Cleaning and Support." The electronic paperwork stated that A+ Staffing would not withhold any employment or other taxes from Vasquez's pay, and that Vasquez would be responsible for all tax payments. Vasquez never received any record of the hours that she worked, or the hours that she was recorded to have worked, from on or about July 29, 2020, to on or about May 1, 2021.

77.   On or about April 29, 2021, Plaintiff Vasquez and other employees received an email stating, "Welcome to Staff Support Team, LLC!" The email instructed them to fill out "new hire forms," including I9s and W4s, using a link to the documents.

78.   Plaintiff Vasquez's supervisor, Felix, completed the Staff Support Team forms for her.

79.   The new hire paperwork did not include the wage notice that is required under NYLL, Article 6, § 195(1), nor did Defendants otherwise provide Vasquez with the required wage notice. As a result, Vasquez was not sure what her hourly rate of pay would be; whether she would receive overtime pay, and if so, what her overtime rate would be; whether deductions would be taken from her pay, for example, for supplies; or what the official name, address, or phone number of her employer was.

80.   Although it was clear that Plaintiff Vasquez would be providing work for a contractor that was contracted to provide work for the MTA, Staff Support Team did not provide Plaintiff Vasquez with any notice that she was entitled to prevailing wages or supplemental benefits.

81.     No notice of the right to receive prevailing wages was posted in the workplace, nor were any other notices concerning workplace rights, such as required notices under the New York Labor Law and the Fair Labor Standards Act.

82.     At some point after May 1, 2021, Plaintiff Vasquez began to receive her pay by debit card and did not receive paper wage statements. Instead, Plaintiff's pay statements were only available to her through an electronic portal. Defendants did not provide her with a workplace computer and printer that she could use to view and print her pay stubs while on company time.

83.     The first several statements that were available through the portal included a notation at the bottom: "MACK 0001." Upon information and belief, the reference is to the Mack Defendants. Later pay statements included the notation: "MTA 0001."

84.     Plaintiff Vasquez and other employees performed their work as subway cleaners in the same locations and in the same manner that they had before May 1, 2021. They also reported to the same supervisors.

85.     Defendants were responsible for setting Plaintiff Vasquez's schedule, directing and supervising the manner of her work, including the supplies and equipment she was required to use, and determining how she would be paid.

86.     Plaintiff Vasquez normally worked at the Brighton Beach subway station. She sometimes worked at the Coney Island/Stillwell Avenue station.

87.     Although Defendants did not have a time clock, when Plaintiff Vasquez reported for work, she put her name on a piece of paper to record her arrival at the worksite. In addition, a supervisor was present to record who was working and when they were working.

88.     Plaintiff Vasquez's duties included cleaning and sanitizing Transit Authority subway cars and stations. Specifically, Vasquez cleaned the B train when it arrived at the subway station by wiping the surfaces of the train's interior, mopping, and sweeping.

89.     From on or about July 29, 2020, until on or about May 1, 2021, before she was sent a link to the new hire paperwork from Defendant Staff Support Team, Plaintiff Vasquez normally

worked five days per week, Monday through Friday, from 6:00 a.m. until 2:00 p.m. In addition, she sometimes worked double shifts.

90.     During the summer of 2021, Defendants' records show that Plaintiff Vasquez usually worked anywhere from 26 hours per week to 43 hours per week. Defendants' records show that Plaintiff worked 43 hours during the week from July 12, 2021, to July 18, 2021.

91.     Plaintiff Vasquez sometimes worked over eight hours in a day, including during the weeks that she worked overtime.

92.     Throughout Plaintiff Vasquez's employment with Defendants, from on or about May 1, 2021, to on or about December 20, 2021, she was paid $15.00 per hour for her work performed for Defendants at Transit Authority work sites.

93.     Throughout Plaintiff Vasquez's employment with Defendants, she did not receive any supplemental benefits for her work on the various worksites under Transit Authority Contracts nor was she paid the required prevailing wage rates in effect at the time for work performed under Transit Authority Contracts.

94.     When Plaintiff Vasquez received overtime pay for working over 40 hours in a week, it was based on the base rate of $15 per hour rather than the applicable prevailing wage rate in effect at the time.

95.     The New York Paid Sick Leave Law went into effect in September 2020, and required employers as of January 1, 2021, to provide employees with paid sick leave.

96.     Although NYLL § 195(5) requires employers to "notify … employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours," Defendants did not comply with this obligation, and Plaintiff Vasquez never learned that she had any right to take paid sick leave.

97.     Plaintiff Vasquez's paystubs, which were only available to her electronically, showed no accrued sick leave until November 2021. Even then, she was not aware that she had any accrued sick leave, since she had never been informed that she had any benefits.

98.     When Plaintiff Vasquez was unable to work due to illness or other reasons that would have entitled her to paid sick leave, she was not paid, even when she told her supervisor the reasons that she was unable to work.

99.     In the summer of 2021, Plaintiff Vasquez began to bring workplace concerns to the attention of a supervisor, Felix. Felix had been supervising the work of Vasquez and other subway cleaners since Vasquez started working as a subway cleaner in July 2020.

100.    For example, Plaintiff Vasquez objected to Felix's statements that subway cleaners would be required to buy their own supplies, such as spray bottles, for which he would charge five or six dollars. Vasquez said that she was broke, and that she could not afford to do that. Felix told Vasquez that he would not let her work if she didn't buy a bottle. He further said that if employees were going to complain to him about the five dollars, then he was "gonna get everybody"; he was "gonna dock everybody, so now they want to come at me for $5, then I'll come at you for every little wrong thing you do. I'm watching how you disinfect; if I'm not happy with it, I'm sending you home … so at the end of the day, $5 gonna be the end of the world? If that's gonna be what it is, then I can't put you on the schedule."

101.    Before then, Plaintiff Vasquez had worked predictable hours: the morning shift, Monday to Friday, with occasional double shifts. After she began complaining, her hours were reduced, and one day, she reported to work but was told that she was not needed. She sometimes would not learn that she was scheduled until the night before a shift, and if she had made other plans, she would be unable to work because of the late notice.

102.    On or about December 18, 2021, Plaintiff Vasquez brought her complaints to the attention of Staff Support Team. An investigator from "Work Shield" was assigned to investigate the matter.

103.    Later in December 2021, however, Plaintiff Vasquez and the other employees learned that there would be a new entity taking over for Staff Support Team: Mack Cat.

104.   On December 31, 2021, in response to Plaintiff Vasquez's inquiry, Staff Support Team informed her that she should reach out to Robert Mack, who "is the head of the company that has taken over the contract for MTA. Please reach out to him with your questions regarding the onboarding paperwork and documents required."

105.   On a phone call that same day, a person from Work Shield told Plaintiff Vasquez that they had received the report from the investigators the day before, but that Work Shield was no longer doing business with Staff Support Team, and that they would send the results to Plaintiff Vasquez's new employer, Robert Mack, and his company, Mack Cat.

106.   That same day, Plaintiff Vasquez spoke to Robert Mack. Mack told her that he had received the complaint and report from Work Shield, and that he had forwarded the report to Felix. Plaintiff was surprised and concerned to hear that, since she had been told that the information would be confidential.

107.   Mack asked Plaintiff Vasquez if she would be willing to work at a different subway station, so that she could feel more comfortable. He said it might be better if she did not work near Felix until Mack could investigate the matter fully and speak to Felix.

108.   Plaintiff Vasquez said that she did not want to do that. She wanted to work at the Brighton Beach station because it is close to her home.

109.   Mack told Plaintiff Vasquez that he had to go through the report, and that he would have to speak to Felix.

110.   Mack told Plaintiff Vasquez that her job was a temp job, that she was an at will employee, that she was not guaranteed any specific number of hours per week, but that it was not right for her to suffer retaliation.

111.   Mack assured Plaintiff Vasquez that she would get the hours she needed.

112.   On January 2, 2022, Mack texted Plaintiff Vasquez to say that he would be emailing her an offer of employment and that she would hear about her new schedule from another supervisor. Mack said he did not feel comfortable with Vasquez working with Felix at the

Brighton Beach station because, "it would create a hostile work environment that is already present between [Plaintiff Vasquez and Felix]."

113.    Plaintiff Vasquez responded that she wanted to continue working where she had always been working, and that she should not have to suffer retaliation because she reported her concerns about the workplace.

114.    Mack responded: "I was not your employer during these times. I only took over on 12-27-2021. This is a temp job!!! You are a temp employee. If you feel the work environment is to[o] hostile then seek work elsewhere. If not work it out with Felix. I don't know what else to tell you. The managers set the work schedule based their needs. By going to another line would solve your issues. It's the same job and duties. Your an on-call of temp worker and this is and will be a temp assignment. I don't care where you work I just don't issues that would jeopardize my contract. I suggest you talk with Felix and work it out bc I offered you a solution...."

115.    Since that time, despite her efforts, Plaintiff has not received any assignments from the Mack Defendants.

## III.    Plaintiff Maria de Pilar Espinoza Vera's work for Defendants

116.    Plaintiff Maria de Pilar Espinoza Vera began working as a subway cleaner in or around September 2021.

117.    She did not complete any paperwork before beginning her employment.

118.    For over two months, she was sometimes paid in cash, sometimes by transfer from Zelle, and sometimes by direct deposit. She was not always paid on a weekly basis. She did not receive wage statements, and she sometimes had to inform her supervisor that she was not paid the correct amount.

119.    In or about November 2021, Plaintiff de Pilar Espinoza Vera received a link on her phone for electronic new hire paperwork for Defendant Staff Support Team. She told her supervisor, Felix, that she was having trouble opening the paperwork. He told her that he would

help her complete it. He took her phone and filled out the paperwork for her. She asked him if she could have paper copies of the documents, but he told her no, and that she should just sign her name where he told her to sign.

120.    Plaintiff de Pilar Espinoza Vera does not speak or understand English. She asked Felix if she could get all the documents in Spanish and if she could have time to review the documents, but he refused.

121.    Plaintiff de Pilar Espinoza Vera did not receive print copies of the paperwork, nor were the papers emailed to her.

122.    Plaintiff de Pilar Espinoza Vera did not understand the documents that Felix directed her to sign. Plaintiff de Pilar Espinoza Vera only signed the documents because she felt she had to agree to them, or she would not be permitted to work.

123.    As far as Plaintiff de Pilar Espinoza Vera can recall, the paperwork did not include the wage notice that is required under NYLL, Article 6, § 195(1), nor did Defendants otherwise provide Plaintiff de Pilar Espinoza Vera with the required wage notice. As a result, de Pilar Espinoza Vera was not sure: what her hourly rate of pay would be; whether she would receive overtime pay, and if so, what her overtime rate would be; whether deductions would be taken from her pay, for example, for supplies; or what the official name, address, or phone number of her employer was.

124.    After that, Plaintiff de Pilar Espinoza Vera was normally paid by direct deposit. She did not receive paper pay statements, however, and to her knowledge, she did not have access to electronic pay statements. Even if she did have access to electronic pay statements, Defendants did not provide her with a workplace computer and printer that she could use to view and print her pay stubs while on company time.

125.    Although it was clear that Plaintiff de Pilar Espinoza Vera would be working for a contractor that was contracted to provide work for the MTA, Staff Support Team did not provide notice that de Pilar Espinoza Vera was entitled to prevailing wages or supplemental benefits.

126.   Plaintiff de Pilar Espinoza Vera saw no notice of the right to receive prevailing wages posted in the workplace, nor did she see any other notices concerning workplace rights, such as required notices under the New York Labor Law and the Fair Labor Standards Act.

127.   Plaintiff de Pilar Espinoza Vera and other employees performed their work as subway cleaners in the same locations and in the same manner that subway cleaners had before May 1, 2021. They also reported to the same supervisors.

128.   Defendants were responsible for setting Plaintiff de Pilar Espinoza Vera's schedule, directing and supervising the manner of her work, including the supplies and equipment she was required to use, and determining how she would be paid.

129.   Plaintiff de Pilar Espinoza Vera normally worked at the Brighton Beach subway station. She sometimes worked at the Kings Highway station.

130.   Although Defendants did not have a time clock, when Plaintiff de Pilar Espinoza Vera reported for work, she put her name on a piece of paper to record her arrival at the worksite. In addition, a supervisor was present to record who was working and when they were working.

131.   Plaintiff de Pilar Espinoza Vera's duties included cleaning and sanitizing Transit Authority subway cars and stations. Specifically, de Pilar Espinoza Vera cleaned the train when it arrived at the subway station by wiping the surfaces of the train's interior, mopping, and sweeping.

132.   From on or about September 2021, until on or about December 23, 2021, Plaintiff de Pilar Espinoza Vera normally worked five days per week, Monday through Friday, from 6:00 a.m. until 12:30 p.m. In addition, she sometimes worked a double shift, which was more than eight hours in a day.

133.   Throughout Plaintiff de Pilar Espinoza Vera's employment with Defendants, from in or about September 2021 to on or about December 23, 2021, she was paid $15.00 per hour for her work performed for Defendants at Transit Authority work sites.

134.   Throughout Plaintiff de Pilar Espinoza Vera's employment with Defendants, she did not receive any supplemental benefits for her work on the various worksites under Transit Authority Contracts nor was she paid the required prevailing wage rates in effect at the time for work performed under Transit Authority Contracts.

135.   The New York Paid Sick Leave Law went into effect in September 2020, and required employers as of January 1, 2021, to provide employees with paid sick leave.

136.   Although NYLL § 195(5) requires employers to "notify … employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours," Defendants did not comply with this obligation and Plaintiff de Pilar Espinoza Vera never learned that she had any right to take paid sick leave.

137.   Plaintiff de Pilar Espinoza Vera was never told that she had any benefits.

138.   When Plaintiff de Pilar Espinoza Vera was unable to work due to illness or other reasons that would have entitled her to paid sick leave, she was not paid, even when she told her supervisor the reasons that she was unable to work. In December 2021, for example, she informed her supervisor that she could not work because she had COVID.

139.   In or about January 2022, Plaintiff de Pilar Espinoza Vera's supervisor, Felix, told her that his boss would be taking over for Staff Support Team. Upon information and belief, Felix was referring to Robert Mack.

## FIRST CAUSE OF ACTION:
### Fair Labor Standards Act – Unpaid Overtime

140.   Plaintiff Vasquez, on behalf of herself and the FLSA Collective Members, incorporates the allegations above.

141.   The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et. seq.*, and the supporting federal regulations, apply to Defendants and protect the Plaintiffs and the FLSA Collective.

142.   Defendants have failed to pay the Plaintiff Vasquez and the FLSA Collective time and one-half their regular rate of pay for all hours they worked in excess of 40 hours in a work week.

143.   As a result of Defendants' violations of the FLSA, Plaintiff Vasquez and the FLSA Collective Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. §§ 201 *et seq.*

144.   Defendants' unlawful conduct, as described in this complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this complaint were unlawful. Defendants have not made any good faith effort to comply with the FLSA with respect to the compensation of Plaintiff Vasquez and the FLSA Collective Members.

145.   Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, under 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION:
### Breach of Contract

146.   Plaintiffs, on behalf of themselves and the Class Members, incorporate the allegations above.

147.   Upon information and belief, the Transit Authority Contracts entered into by Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and the employees performing work pursuant to such contracts.

148.   The prevailing rate schedules require that employees working over eight hours in one day be paid overtime.

149.   Those prevailing rates of wages and supplemental benefits were made part of the Transit Authority Contracts for the benefit of the Plaintiffs and the other employees performing work under such contracts.

150.   If the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were implied as a matter of law, requiring Defendants to pay the Plaintiffs and Class Members prevailing wages, daily/weekly overtime, and supplemental benefits for all work performed.

151.   Defendants' failure to pay Plaintiffs and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed under the Transit Authority Contracts constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

152.   As a result of Defendants' failure to pay Plaintiffs and the Class Members at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

### THIRD CAUSE OF ACTION:
### Unjust Enrichment & Quantum Meruit
### (Pleaded in the Alternative)

153.   Plaintiffs, on behalf of herself and the Class Members, incorporate the allegations above.

154.   Based on Defendants' failure to pay Plaintiffs the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

155.   Equity and good conscience require that Defendants pay restitution to Plaintiffs.

156.   Upon information and belief, when Defendants entered into the contract, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiffs and other employees who performed work pursuant to the Transit Authority Contracts.

157.   Plaintiffs provided valuable services to Defendants performing prevailing wage jobs for which Plaintiffs expected compensation.

158.   Defendants knowingly accepted such services yet failed to pay Plaintiffs the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

159.   As a result of Defendants' failure to pay Plaintiffs at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiffs are entitled to relief from Defendants under New York's common law of unjust enrichment.

160.   As a result of Defendants' failure to pay Plaintiffs the reasonable value of the valuable services they rendered, Plaintiffs are entitled to relief from Defendant under New York's common law of quantum meruit.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Wage Notice Violations

161.   Plaintiffs, on behalf of themselves and the Class Members, incorporate the allegations above.

162.   At all relevant times, Defendants employed and/or continue to employ Plaintiffs and each Class Member within the meaning of the New York Labor Law, §§ 2 and 651.

163.   Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by NYLL Article 6, §195, on the date of hire and on the date of any wage increases, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, §191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

164.   Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants $50.00 per employee for each workday that the violations occurred or continue to occur, up to a total of $5,000 per employee, as well as reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW – PAID SICK LEAVE VIOLATIONS

165.   Plaintiffs, on behalf of themselves and the Class Members, incorporate the allegations above.

166.   Under NYLL § 196(b), beginning on September 30, 2020, Plaintiffs and the Class Members were entitled to accumulate paid sick leave at a rate of one hour for every 30 hours worked.

167.   Beginning on January 1, 2021, Plaintiffs and the Class Members were entitled to take paid sick leave.

168.   Although NYLL § 195(5) requires employers to "notify … employees in writing or by publicly posting the employer's policy on sick leave, vacation, personal leave, holidays and hours," Defendants did not comply with this obligation.

169.   Defendants never provided Plaintiffs or the Class Members with paid sick leave.

170.   Defendants' failure to provide Plaintiffs with paid sick leave violated the New York Paid Sick Leave Law, NYLL § 196(b).

171.   Due to Defendants' NYLL violations, Plaintiffs and the Class Members are entitled to recover from Defendants all unlawfully withheld benefits, together with liquidated damages, as well as attorneys' fees and costs, and interest.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – RETALIATION

172.   Plaintiff Vasquez, on behalf of herself, incorporates the allegations above.

173.    After Plaintiff Vasquez complained about the fact that employees were being required to purchase supplies such as spray bottles, which is an unlawful deduction under NYLL § 193, Plaintiff's hours were reduced and she was no longer scheduled for regular shifts, as she had been in the past. Further, since December 20, 2021, she has not received any assignments from Defendants.

174.    Under NYLL § 215(1)(a), no employer or his or her agent shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee because such employee has made a complaint to his or her employer that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of the NYLL or because such employee has otherwise exercised rights protected under the NYLL.

175.    Due to Defendants' NYLL violations, Plaintiff Vasquez is entitled to recover from Defendants liquidated damages up to $20,000, costs, reasonable attorneys' fees, and any other appropriate relief under NYLL § 215(2)(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Collective Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Members and ordering the prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Members

b.    Certification of this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class, appointing Plaintiffs and their counsel to represent the Class and ordering appropriate monetary, equitable and injunctive relief to remedy Defendants' violation of the common law and New York State law

c.    An order tolling the statute of limitations

d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, and New York common law

e.   An injunction against Defendants and their officers, agents, successors, employees, representatives, and any persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein

f.   An award of compensatory damages as a result of Defendants' willful failure to pay overtime compensation under the FLSA and supporting regulations

g.   An award of liquidated damages as a result of Defendants' willful failure to pay overtime compensation under the FLSA and supporting regulations

h.   $50.00 per Plaintiff and each Class Member for each workday that the violations of the wage notice provision of the NYLL, Article 6 § 195, occurred or continue to occur, up to a total of $5,000 per Plaintiff and each of the NYLL Class Members, as provided for by NYLL, Article 6 § 198(1-b)

i.   An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiffs and the Class

j.   An award of monetary damages to be proven at trial for Defendants' retaliation against Plaintiff Vasquez in violation of NYLL § 215(1)(a)

k.   An award of prejudgment and postjudgment interest

l.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

m.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial

by jury on all questions of fact raised by the Complaint.

Dated:   June 13, 2022
         New York, New York

Margaret A. Malloy
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
518-692-3748
mmalloy@workingsolutionsnyc.com

Brendan Sweeney
The Law Office of Christopher Q. Davis, PLLC
80 Broad Street, Suite 703
New York, New York 10004
646-430-7930
bsweeney@workingsolutionsnyc.com
*Attorneys for Plaintiffs*