UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
KRYSTAL  VASQUEZ,  *et al.*, *individually
and on behalf of all others similarly situated*,

                       Plaintiffs,

           -against-

A+ STAFFING LLC, *et al.*,

                      Defendants.
--------------------------------------------------------X

KRYSTAL  VASQUEZ,  *et al.*, *individually
and on behalf of all others similarly situated*,

                       Plaintiffs,

           -against-

STAFF SUPPORT TEAM, *et al.*,

                      Defendants.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
22 CV 2306 (CLP)

22 CV 3468 (CLP)

**POLLAK**, United States Magistrate Judge:

       The above-captioned cases are two related wage and hour actions brought under Federal

and New York State wage and hour laws by several named plaintiffs (collectively, the

"plaintiffs"), on behalf of themselves and a proposed class and collective of employees.

Plaintiffs brought these actions against two overlapping groups of defendants, described below

and referred to as the "A+ defendants" and the "SST defendants" (collectively, the

"defendants").  On March 20, 2023, plaintiffs filed their Third Amended Complaints against the

A+ defendants and the SST defendants.  (A+ Action,[1] ECF No. 55 (the "A+ Third Amended

---

[1] The term "A+ Action" refers to <u>Vasquez, et al. v. A+ Staffing LLC, et al.</u>, No. 22 CV 2306 (CLP).  The
term "SST Action" refers to <u>Vasquez, et al. v. Staff Support Team, et al.</u>, No. 22 CV 3468 (CLP).  Unless otherwise
stated, citations to ECF document numbers refer to the documents filed in the A+ Action.

Complaint" or "A+ TAC"); SST Action, ECF No. 60 (the "SST Third Amended Complaint" or "SST TAC")).  The parties consented to the undersigned's jurisdiction for all purposes on March 1, 2024.  (ECF No. 98; SST Action, ECF No. 90).

Currently before the Court is a motion for preliminary approval of a proposed settlement and conditional certification, for purposes of settlement only, of a collective action under Section 216(b) of the Fair Labor Standards Act ("FLSA"), and a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure (the "Motion" or "Mot.").  (ECF No. 95; SST Action, ECF No. 87).  For the reasons set forth below, the Court DENIES plaintiffs' Motion, without prejudice to renew.

## FACTUAL BACKGROUND

Plaintiffs, who have brought these actions on behalf of themselves and all others similarly situated, are individuals who are or were allegedly employed by defendants to "disinfect subway cars and high touch points in New York City subway stations" ("subway cleaning work").  (A+ TAC ¶¶ 3–4; SST TAC ¶¶ 3–4).  The A+ defendants include:  A+ Staffing LLC, A+ Student Staffing LLC, Mack Staffing Services, and Robert Mack (collectively, the "A+ Subcontractor defendants"), as well as Supreme Restoration, LLC, d/b/a Servpro of Washington County, and JDL Inc., d/b/a Servpro of Newport & Bristol Counties (collectively, "Servpro").  (See A+ TAC ¶¶ 1–2).  The SST defendants include:  Staff Support Team, Mack Management Group LLC, Mack Cat Labor, and Robert Mack (collectively, the "SST Subcontractor defendants"), as well as the Servpro entities, which are named as defendants in both actions.  (See SST TAC ¶¶ 1–2).

Defendants allegedly entered into contracts to provide subway cleaning work to the Metropolitan Transit Authority and/or the New York City Transit Authority (collectively, "the MTA") as part of the MTA's response to the COVID-19 pandemic.  (A+ TAC ¶¶ 3, 41–42; SST TAC ¶¶ 3, 47–48).  Plaintiffs contend that Servpro was the prime contractor with which the

2

MTA contracted, and that the remaining defendants served as subcontractors responsible for hiring plaintiffs and other employees to perform the subway cleaning work.  (A+ TAC ¶¶ 42–44, 94; SST TAC ¶¶ 48–50, 106).

These actions arise out of alleged violations of state and federal labor laws.  Plaintiffs allege that while working for defendants, they did not receive proper overtime wages for work that they performed in excess of forty hours per week, in violation of the FLSA, 29 U.S.C. §§ 201–219, and New York Labor Law ("NYLL") §§ 650–655.  (A+ TAC ¶¶ 6–7; SST TAC ¶ 6). Plaintiffs also allege that they did not receive proper wage notices and wage statements as required by NYLL § 195, and that they did not receive paid sick leave, as required by NYLL § 196-b.  (A+ TAC ¶ 7; SST TAC ¶ 7).  Further, plaintiffs bring claims under New York common law for breach of contract, or, in the alternative, unjust enrichment and quantum meruit, to recover unpaid wages, overtime, shift-differential and holiday premiums, and supplemental benefits.  (A+ TAC ¶¶ 167–181; SST TAC ¶¶ 336–350).  In addition, several of the plaintiffs in the SST Action allege that they were subject to retaliation and threats of retaliation, in violation of NYLL § 215(1)(a), for seeking legal assistance, engaging in these actions, or complaining about defendants' alleged illegal employment practices.  (SST TAC ¶¶ 9–13).

Plaintiffs bring their FLSA claims in both actions as a collective on behalf of themselves and all others similarly situated.  (A+ TAC ¶ 59; SST TAC ¶ 73).  Apart from the individual retaliation claims, plaintiffs bring their NYLL and common law claims as a class and/or subclass under Rule 23 of the Federal Rules of Civil Procedure.  (A+ TAC ¶¶ 76–77; SST TAC ¶¶ 88–89).

PROCEDURAL HISTORY

I.   The Complaints

On April 22, 2022, Krystal Vasquez, on behalf of herself and all others similarly situated, commenced an action which, under the operative A+ Third Amended Complaint, brings claims against the A+ defendants.  (A+ TAC ¶¶ 1–2).  The A+ Third Amended Complaint also lists the following individuals as named plaintiffs:  Milena Elizabeth Aguilar Santana, Kraig Brown, Jose Guillermo Medrano Aguilar, and Mario Chafoya (collectively, with Krystal Vasquez, the "A+ plaintiffs").  (See A+ TAC).  The A+ plaintiffs bring claims on behalf of themselves, as well as a putative collective under the FLSA, 29 U.S.C. § 216(b), and a putative Rule 23(b)(3) class and subclass with respect to the New York common law and NYLL claims.  (A+ TAC ¶¶ 6–8).

On June 13, 2022, Krystal Vasquez and Maria de Pilar Espinoza Vera, on behalf of themselves and all others similarly situated, commenced a related action which, under the operative SST Third Amended Complaint, brings claims against the SST defendants.  (SST TAC ¶¶ 1–2).  The SST Third Amended Complaint also lists the following individuals as named plaintiffs:  Milena Elizabeth Aguilar Santana, Jose Alexei Morales Garavit, Kraig Brown, Diorissa Carela Medina, Aracelis Peralta, Adonis Perez, Edgar O. Sanchez Gatica, Jose Guillermo Medrano Aguilar, Ronal Miguel Argueta Medrano, Mario Rene Chafoya, and Eugenio Serrano (collectively, with Krystal Vasquez and Maria de Pilar Espinoza Vera, the "SST plaintiffs").  (See SST TAC).  The SST plaintiffs bring claims on behalf of themselves, as well as a putative collective under the FLSA, 29 U.S.C. § 216(b), and a putative Rule 23(b)(3) class and subclass with respect to the New York common law and NYLL claims.  (SST TAC ¶¶ 6–8).  The Civil Cover Sheet filed in the SST Action acknowledges the A+ Action as a related case, which the Court noted on the docket.  (See SST Action, ECF No. 6; SST Action, Notice of

4

Related Case, dated June 14, 2022; SST Action, Order Reassigning Case as Related, dated June 21, 2022).

Consistent with the factual allegations mentioned above, the A+ Action includes six causes of action against various configurations of the A+ defendants, including one cause of action brought on behalf of an FLSA collective (A+ TAC ¶¶ 161–166), and five causes of action brought on behalf of a Rule 23 class or subclass (id. ¶¶ 167–196). The SST Action includes eleven causes of action against various configurations of the SST defendants, including one cause of action brought on behalf of an FLSA collective (SST TAC ¶¶ 330–335), five causes of action brought on behalf of a Rule 23 class or subclass (id. ¶¶ 336–364), and five causes of action brought by individual SST plaintiffs and groups of SST plaintiffs on behalf of themselves (id. ¶¶ 365–385).

II.   Motion Practice and Eventual Settlement

On March 7, 2023, following a premotion conference before the Honorable LaShann DeArcy Hall, United States District Judge, the district court ordered the parties to engage in limited discovery with respect to the formation of an agreement to arbitrate plaintiffs' claims against defendants A+ Staffing LLC, A+ Student Staffing LLC, and Staff Support Team. (See A+ Action, Minute Entry and Order, dated Mar. 7, 2023; SST Action, Minute Entry and Order, dated Mar. 7, 2023). On April 3, 2023, A+ Staffing LLC and A+ Student Staffing LLC filed a motion to compel arbitration. (ECF No. 59).

On April 28, 2023, the A+ plaintiffs filed a motion for conditional certification of the FLSA collective described in the A+ Third Amended Complaint. (ECF No. 64). This motion also sought court authorized notice, expedited discovery, and equitable tolling of the statute of limitations pursuant to 29 U.S.C. § 216(b). (Id.) The A+ plaintiffs also filed an Affidavit/Declaration and a Memorandum of Law in support of this motion. (ECF Nos. 65, 66).

5

On September 28, 2023, defendants A+ Staffing LLC, A+ Student Staffing LLC, and Staff Support Team filed a joint letter with plaintiffs (collectively, the "parties"), announcing that the parties had agreed to engage in private mediation, which they scheduled for December 14, 2023. (ECF No. 89; see also SST Action, ECF No. 81). The parties also requested an adjournment of all deadlines related to the then-pending motion to compel arbitration. (ECF No. 89; see also SST Action, ECF No. 81). The Court granted the parties' adjournment requests and directed them to file a letter no later than December 19, 2023, informing the Court of the outcome of their private mediation. (Electronic Order, dated Sept. 28, 2023; SST Action, Electronic Order, dated Sept. 28, 2023).

On December 19, 2023, the parties filed a joint letter informing the Court that they reached a settlement through mediation, and that they were "working out the details of the settlement terms." (ECF No. 92; SST Action, ECF No. 84). On February 15, 2024, plaintiffs filed in both actions an unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of the Settlement Class, Appointment of Plaintiffs' Counsel as Class Counsel, Appointment of a Settlement Claims Administrator, and Approval of Proposed Notice of Settlement (the "Motion"). (ECF No. 95; SST Action, ECF No. 87). Plaintiffs also filed a proposed order granting the Motion (the "Proposed Order") (ECF No. 95-1), a declaration by plaintiffs' counsel (the "Sweeney Declaration" or "Sweeney Decl.") (ECF No. 96), a Memorandum of Law in support of the Motion (the "Memorandum" or "Mem.") (ECF No. 97), a copy of the proposed Settlement Agreement and Release (the "Agreement" or "Agr.") (ECF No. 96-1), and a copy of the Proposed Notice (ECF No. 96-2) (See also SST Action, ECF Nos. 87-1, 88, 88-1, 88-2, 89).

On March 5, 2024, in light of the instant Motion and the defendants' lack of opposition

thereto, this Court dismissed as moot all other pending motions, including A+ Staffing LLC and

A+ Student Staffing LLC's April 3, 2023, motion to compel arbitration, and the A+ plaintiffs'

April 28, 2023, motion for conditional certification of a FLSA collective.  (See Electronic Order,

dated Mar. 5, 2024).

III.   Proposed Settlement Terms

Given the size of this action and the complexity of the settlement structure, the Court will

provide an overview of the terms of the parties' proposed Agreement before proceeding to its

analysis.

A.   Settlement Scope and Administration

The Agreement seeks to resolve all FLSA and state law claims raised in the A+ Action

and the SST Action.  (Agr. at p. 5).  As proposed, defendants would establish a "Gross

Settlement Fund" of up to $1,250,000 to fully resolve and satisfy any claims for (1) attorney's

fees, expenses, and costs, (2) costs and fees of the Settlement Claims Administrator[2] (the

"Administrator"), (3) amounts to be paid to Authorized Claimants, and (4) service awards (also

known as "incentive awards") to Named Plaintiffs and Opt-in Plaintiffs.  (Id. ¶ 3.1(A)).[3]

Within twenty-one days of a Court order conditionally certifying a collective and class

action and granting preliminary approval of the Agreement, the Administrator would be required

to mail Notice of Proposed Class and Collective Action Settlement ("Notice") to all class

---

[2] The parties propose RG/2 Claims Administration, LLC as the Claims Administrator.  (Proposed Order ¶ 13).

[3] The Agreement defines "Authorized Claimant" as "a Class Member who does not opt out of the proposed settlement."  (Agr. ¶ 1.5).  The term "Class Member" is, in turn, defined as all "Named Plaintiffs, Opt-in Plaintiffs," and all individuals included within the class definition who do not timely opt out of the settlement.  (Id. ¶ 1.6).  The term "Named Plaintiffs" is defined in the Agreement as the individuals whose names appear in the A+ Third Amended Complaint and the SST Third Amended Complaint.  (Id. ¶ 1.21).  The term "Opt-in Plaintiff" is defined in the Agreement as "any individual who filed an Opt-in form in either Litigation."  (Id. ¶ 1.34).

members.  (Id. ¶ 2.4; see also Proposed Notice).  The Notice would "advise [class members] of the opportunity to object to, opt-out of, or take steps to remain in the Class."  (Agr. ¶ 2.4).  Class members who wish to opt out of the class would be required to mail a written, signed opt-out statement to the Administrator, which must be post-marked or received by the Administrator within sixty days after the initial mailing of the Notice.  (Id. ¶ 2.8(B); see also Proposed Order ¶ 15).  If more than thirty-three percent of the class members opt out of the class, the Agreement would allow defendants to cancel the settlement.[4]  (Agr. ¶ 2.8(E)).  The Agreement calls for a final fairness hearing to be held no sooner than ninety days after an order granting preliminary approval of the Agreement.  (Id. ¶ 2.6).  Class members who wish to object to the Agreement at the final fairness hearing would be required to first submit their objections in writing within the same timeframe specified for opting out of the class.  (Id. ¶ 2.9(A)).

Upon the Court's issuance of a Final Approval Order, authorized claimants would fully release and discharge the Released Entities[5] from any and all state law claims, as defined in section 1.33 of the Agreement, and the Court would dismiss the actions with prejudice.  (Id. ¶¶ 4.1(A), 1.15).  Within thirty days of the Final Effective Date,[6] the claims administrator would mail a settlement check to each authorized claimant for an amount determined by an agreed-upon

---

[4] This type of clause is often referred to as a "blow up provision," which "allows the defendant to withdraw from—or 'blow up'—a settlement if a certain number of class members opt out of the settlement."  4 William B. Rubenstein, Newberg on Class Actions, § 13:6 (5th ed. Dec. 2021 update).  Courts in this circuit have generally approved settlements that include blow up provisions.  Medina v. NYC Harlem Foods Inc., No. 20 CV 1321, 2022 WL 1184260, at *6 (S.D.N.Y. April 21, 2022).  Courts in the Ninth Circuit have approved settlement agreements with blow up provisions with opt-out thresholds as low as five percent.  See del Toro Lopez v. Uber Technologies, Inc., No. 17 CV 6255, 2018 WL 5982506, at *25 (N.D. Cal. Nov. 14, 2018) (granting final approval to a settlement agreement with a blow-up clause with a five percent opt-out threshold); see also Mondrian v. Trius Trucking, No 19 CV 884, 2022 WL 2306963, at *4 (E.D. Cal. June 27, 2022) (granting preliminary approval to a settlement agreement with a blow-up clause with a five percent out-out threshold).  Here the proposed blow-up provision is based on more than 33% of the class opting out, which is well above the percentage approved by other courts.

[5] Per the Agreement, the term "Released Entities" includes defendants in the A+ Action and SST Action, as well as several other Servpro entities not listed in the above-captioned cases.  (Agr. ¶ 1.28).

[6] The "Final Effective Date" is defined in the Agreement as thirty days after the Court issues a final approval order approving the Agreement, provided that the order is not appealed.  (Agr. ¶ 1.14).  In the case of an appeal, the Agreement provides a separate definition for the Final Effective Date.  (Id.)

formula, which is discussed below.  (Id. ¶¶ 3.2(A), 3.5(E)).  The back of each settlement check would contain language indicating that any authorized claimant who endorses, signs, deposits, and/or negotiates his check would be deemed to have consented to join the above-captioned actions and to have agreed to the Agreement "and the releases therein," including the release of "any and all contractual and wage-related" FLSA claims.  (Id. ¶ 4.1(D)).  The Agreement, therefore, creates a distinction between those authorized claimants who cash their checks and those who do not.  Each authorized claimant who endorses his or her check would be deemed to have also fully released and discharged the Released Entities from any and all FLSA claims.  (Id. ¶ 4.1(B)).  However, those who choose not to endorse their checks, although deemed to have released their state law claims as class members (assuming that they did not opt out of the settlement entirely), would not release and/or discharge any potential FLSA claims against the released entities.

      B.    <u>Service Awards and General Release</u>

In addition to receiving their portion of the settlement fund as described below, the Agreement would provide a Service Award of $5,000 to each Named Plaintiff, and $2,500 to each Opt-in Plaintiff, "for their efforts rendered on behalf of the class."  (Mem. at 7; <u>see also</u> Agr. ¶ 3.2(B)).  In exchange for those awards, the Named and Opt-in Plaintiffs would release the Released Entities "from any and all claims, demands, rights, actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, costs, expenses, matters and issues arising in any way from the beginning of time until the date of the Approval Order . . ." under any federal, state, or local law or ordinance.  (Agr. ¶ 4.1(C)).

C.    Distribution of Settlement Funds

      1.    Administrator Costs and Fees

The Agreement earmarks up to $60,000 of the Gross Settlement Fund for Administrator's fees.  (Id. ¶ 3.4).  Specifically, it calls on plaintiffs, as part of their motion for final approval, to "submit a declaration from the Administrator detailing the administration process" and to "petition the Court for an award of administration fees."  (Id.)  Further, the Agreement calls on class counsel at the final fairness hearing to "petition the Court to award the Administrator its fees and expenses" from the Gross Settlement Fund.  (Id.)

      2.    Attorney's Fees and Costs

The Agreement also provides for an award of attorney's fees and costs for class counsel. (Id. ¶ 3.3).  At the final fairness hearing, class counsel, per the Agreement, will petition the Court for an award of up to $416,000 in attorney's fees and up to $22,000 for reimbursement of class counsel's litigation expenses.  The Agreement also provides that defendants "will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court and provided it does not exceed [the amounts allowed by the Agreement]."  (Id.)  This provision is known as a "clear-sailing" clause.  See Tagaeva v. BNV Home Care Agency, Inc., No. 16 CV 6869, 2019 WL 13220138, at *4 (E.D.N.Y. Oct. 8, 2019).

      3.    Distribution of Funds

Of the $1,250,000 Gross Settlement Fund, only a subset is earmarked for distribution to class/collective members (the "Net Settlement Amount").  The Net Settlement Amount is calculated by deducting from the Gross Settlement Fund all (1) Court-approved service awards, (2) Court-approved costs and fees of the Administrator, and (3) Court-approved attorney's fees and costs.  (Id. ¶ 3.2).  Each class/collective member's *pro rata* share of the Net Settlement Amount would then be calculated by dividing the total number of weeks the individual worked

10

for defendants between April 2019 and the date of execution of the Agreement by the cumulative number of weeks worked by all class/collective members over the same period.  (Id. ¶ 3.2(A)(2)).  A class/collective member's individual settlement amount is then calculated by multiplying the Net Settlement Amount by his or her share.  (Id.)

Individual settlement amounts would be distributed by check, which class/collective members must cash within ninety days of the date on which the Administrator mails their checks.  (Id. ¶ 3.5(F)).  After ninety days have elapsed, the Administrator, upon obtaining approval from class counsel and defendants' counsel, may apply residual funds towards "any unforeseen liabilities, claims, expenses, and costs incurred by the Administrator."  (Id.)  The Agreement contains no mechanism for the redistribution of any of the remaining funds to class/collective members.  Instead, all remaining funds would be returned to defendants, allocated based on predetermined percentages that are approximately equal to each defendant's initial contribution to the Gross Settlement Fund.  (Id. ¶¶ 3.5(A), 3.5(B), 3.5(C), 3.5(F)).

<u>DISCUSSION</u>

Plaintiffs' Motion requests that the court preliminarily approve the proposed settlement and conditionally certify a collective pursuant to the FLSA, 29 U.S.C. § 216(b), and a settlement class pursuant to Rules 23(b)(3) and (e).  (Proposed Order ¶ 8).  Both the collective and the settlement class would consist of "Named Plaintiffs, Opt-in Plaintiffs and all non-exempt employees who were employed by one or more of the Defendants as Subway Cleaners from April 22, 2019 through the date of execution of the Agreement, who do not opt-out of the Litigation in accordance with the procedures set forth in the Settlement Agreement."  (Id.)  As set forth below, the proposed settlement includes a core structural flaw that ultimately precludes conditional certification and preliminary approval of the proposed settlement:  namely, a check-cashing system for opting in to the litigation that would have members of the FLSA collective

11

join the litigation only after this Court issues final approval of the settlement.  This flaw alone is enough to deny plaintiffs' Motion outright.  However, review of the proposed Agreement reveals several other procedural and substantive issues, each of which further justifies denying the Motion.  In the interest of ensuring that any future settlement negotiations or renewed motions for settlement approval in this action are free of these other concerns, see Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d 277, 283–84 (E.D.N.Y. 2020), the Court addresses below each of the relevant issues.

I.   Legal Standards[7]

   A.   Class Settlement Under Rule 23

Where parties seek to settle claims on a class-wide basis, the court must make two determinations.  First, before examining the settlement itself, the court considers whether the prerequisites for class certification are satisfied.  This requires examining both the basic certification requirements set out in Rule 23(a), as well as one of the three subdivisions of Rule 23(b).  See In re Am. Int'l Grp., Inc. Sec. Litig., 689 F.3d 229, 238 (2d Cir. 2012) (stating that "[b]efore approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied"); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Annunziato v. Collecto, Inc., 293 F.R.D. 329, 334 (E.D.N.Y. 2013).  Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."  Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).

---

[7] Caselaw quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes unless otherwise noted.

It is plaintiffs' burden to establish compliance with each of the requirements of Rule 23 by a preponderance of the evidence.  In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013).  However, in analyzing the issue of certification, the court accepts as true the allegations in the complaint regarding the merits of the claim.  See D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. 451, 454 (E.D.N.Y. 1996) (citation omitted).  While courts are required to conduct a "rigorous" analysis, Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 465-66 (2013), the court may exercise "broad discretion" and "take a liberal rather than a restrictive approach" when reviewing whether to certify a class, Annunziato v. Collecto, Inc., 293 F.R.D. at 334.

If the Court determines that the parties have satisfied the prerequisites for certifying a class under Rule 23, the Court then assesses whether the proposed settlement is "fair, adequate, and reasonable, and not a product of collusion."  Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see also Fed. R. Civ. P. 23(e)(2) (stating that a court may only approve a class-wide settlement "on finding that it is fair, reasonable, and adequate").  To do so, courts in this Circuit assess the procedural and substantive fairness of the settlement by weighing both the factors set out in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000), as well as the factors set forth in Rule 23(e)(2) of the Federal Rules of Civil Procedure, see Moses v. New York Times Co., 79 F.4th 235, 242–43 (2d Cir. 2023) (holding that after the 2018 amendments to Rule 23(e), courts must apply the factors set forth therein and cannot consider the Grinnell factors alone when assessing the fairness of class settlements).

B.    FLSA Settlement

Under the FLSA, employers are required to compensate covered employees for all work performed, including overtime, in order to prevent "labor conditions detrimental to the

13

maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. §§ 202(a), 207(a)(1); see also Guzman v. Three Amigos SJL Inc., 117 F. Supp. 3d 516, 522 (S.D.N.Y. 2015) (explaining that "[t]he purpose of the FLSA . . . was to guarantee [] compensation for all work or employment engaged in by employees covered by the Act" (quoting Reich v. New York City Transit Auth., 45 F.3d 646, 648–49 (2d Cir. 1995))).  To ensure that said violations are not swept under the rug by coercive settlement negotiations between employees and their employers, parties may not "privately settle FLSA claims with a stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure 41 absent the approval of the district court."  Fisher v. SD Prot. Inc., 948 F.3d 593, 599 (2d Cir. 2020) (citing Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 200 (2d Cir. 2015)).

In determining whether to approve an FLSA settlement, courts consider whether the agreement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching."  Le v. Sita Info. Networking Computing USA, Inc., No. 07 CV 86, 2008 WL 9398950, at *1 (E.D.N.Y. June 12, 2008) (quoting Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1354 (11th Cir. 1982)).  Courts within this Circuit have identified several factors to consider when determining whether a proposed settlement is fair and reasonable, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Fisher v. SD Prot. Inc., 948 F.3d at 600 (quoting Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); see also Cohetero v. Stone & Tile, Inc., No. 16 CV 4420, 2018 WL 565717, at *6 (E.D.N.Y. Jan. 25, 2018) (applying the Wolinsky factors).

14

In addition to the <u>Wolinsky</u> factors, <u>Cheeks</u> and its progeny demand that courts review proposed settlements for pernicious and abusive provisions that do not further "the unique policy considerations underlying the FLSA." <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d at 206. This includes "highly restrictive confidentiality provisions" and "overbroad releases that would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour-issues." <u>Allen v. County of Nassau</u>, No. 22 CV 1572, 2023 WL 4086457, at *5 (E.D.N.Y. June 20, 2023) (quoting <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d at 206)); <u>see also</u> <u>Lopez v. Bell Blvd Bakery LLC</u>, No. 15 CV 6953, 2016 WL 6156199, at *2 (E.D.N.Y. Oct. 3, 2016) (collecting cases and explaining that confidentiality and broad general release clauses are impermissible), <u>report and recommendation adopted</u>, 2016 WL 6208481 (E.D.N.Y. Oct. 21, 2016). Courts in this Circuit have also rejected FLSA settlements that include bans on future employment and non-disparagement clauses that do not contain a carve-out for truthful statements. <u>See</u> <u>Ortiz v. My Belly's Playlist LLC</u>, 283 F. Supp. 3d 125, 126 (S.D.N.Y. 2017) (holding that a settlement clause in which plaintiffs agree to never seek re-employment with defendant contravenes the FLSA); <u>Martinez v. Gulluoglu LLC</u>, No. 15 CV 2727, 2016 WL 206474, at *1 (S.D.N.Y. Jan. 15, 2016) (holding that for a non-disparagement clause to be permissible in an FLSA settlement agreement, "it must include a carve-out for truthful statements about plaintiffs' experience litigating their case").

C.      <u>Certifying Hybrid Actions for Settlement Purposes</u>

The FLSA provides that an employee may bring a collective action "for and on behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b); <u>see also</u> <u>Aboah v. Fairfield Healthcare Servs., Inc.</u>, No. 20 CV 763, 2021 WL 6337748, at *5 (D. Conn. Jan. 12, 2021) (noting that the FLSA creates a "*right* of any employee to become a party plaintiff to any

15

[FLSA] action, so long as certain preconditions are met" (quoting Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515 (2d Cir. 2020))).  Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, a collective action brought under the FLSA may only include those employees who affirmatively "opt in" to the action.  Myers v. Hertz Corp., 624 F.3d 537, 542 (2d Cir. 2010) (noting "[u]nlike in traditional 'class actions' . . . plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by the judgment").

Since the FLSA's collective action provision extends only to federal law claims, courts have regularly recognized that parties seeking to litigate state and federal wage and hour claims on a collective basis may bring a "hybrid action," wherein "state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."  Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012).  When dealing with proposed settlements in so-called hybrid actions, courts employ a two-step procedure that simultaneously accounts for the requirements of both the FLSA and Rule 23 of the Federal Rules of Civil Procedure.  See Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 280; Douglas v. Allied Universal Sec. Servs. (hereinafter "Douglas I"), 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019) (citing 29 U.S.C. § 216(b)).[8]

At step one, the parties file a motion for conditional certification of both an FLSA collective action and a Rule 23 class action, preliminary approval of the proposed settlement, and

---

[8] This Court has previously adopted a largely identical two-step approach for resolving pure FLSA collective action settlements, see Marin v. Apple-Metro, Inc., No. 12 CV 5274, ECF No. 385 at 15–20, and courts follow a similar two-step collective action certification process outside of the settlement context.  See Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515 (noting, not in the context of a proposed settlement, that the "[Second Circuit] ha[s] endorsed a two-step process for certifying FLSA collective actions").

approval of the proposed notice.  See Douglas I, 371 F. Supp. 3d at 85.  In resolving said motion, the court must:

1) Determine whether the requirements of Rules 23(a) and 23(b) are "likely" to be satisfied, such that the court may conditionally certify a class action with respect to any state-law claims, Rosenfeld v. Lenich, No. 18 CV 6720, 2021 WL 508339, at *8 (E.D.N.Y. Feb. 11, 2021);

2) Complete an "initial evaluation" of the procedural and substantive fairness of the settlement under Rule 23(e), Torres v. Gristede's Operating Corp., No. 04 CV 3316, 2010 WL 2572937, at *2 (S.D.N.Y. June 1, 2010); see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (noting that preliminary approval turns on "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class" (emphasis added));

3) Determine whether plaintiff has "ma[de] a modest factual showing that they and others together were victims of a common policy or plan that violated the law" so as to warrant conditional certification of a collective action with respect to any FLSA claims, Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515 (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2015));

4) Make a preliminary finding of fairness pursuant to Cheeks, see Douglas I, 371 F. Supp. 3d at 85 (stating that "[w]here the class action is labeled as a NYLL class" and "FLSA claims are part of a collective action, it is appropriate to analyze the fairness of the settlement under Cheeks at the preliminary approval stage"); Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 280 (collecting cases); and

5) Review the parties' proposed notice to confirm that it adequately informs potential collective and class members of the nature of the hybrid action, lists the date of the final fairness hearing, and fully sets forth the process for and consequence of opting in to the collective, opting out of the class, objecting to the settlement, and doing nothing, see Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 284 (describing the requirements for adequate notice of a collective action settlement); Fed. R. Civ. P. 23(c)(2)(B) (requiring courts to "direct to class members the best notice that is practicable under the circumstances"); Rosenfeld v. Lenich, 2021 WL 508339, at *11 (addressing the adequacy of notice at the preliminary approval stage).

If the court grants preliminary approval and conditional certification, notice is sent both to extant collective members who have already joined the litigation, giving them an opportunity

to assent to the settlement to the extent they have not already done so, and to other employees who have not previously joined the litigation, giving them an opportunity to opt in to the litigation and thereby join the FLSA portion of the settlement.  <u>Marichal v. Attending Home Care Servs., LLC</u>, 432 F. Supp. 3d at 280 (citing 29 U.S.C. § 216(b)).[9]  Anyone who wishes to opt in for FLSA purposes must "give[] [their] consent in writing to become . . . a party" and "file[] [such consent] in the court in which [the] action is brought."  29 U.S.C. § 216(b); <u>see also</u> <u>Aboah v. Fairfield Healthcare Servs., Inc.</u>, 2021 WL 6337748, at *5 (noting that "[n]o employee may become a plaintiff until he or she files a written consent on the docket").  Often, this same timeframe is also used as the opt-out period for purposes of Rule 23, during which time individuals with state-law claims choose whether to participate in the state-law portion of the settlement (by doing nothing) or remove themselves from the class (by filing an opt-out form in the manner specified in the notice).  <u>See</u> <u>Douglas v. Allied Universal Sec. Servs.</u> (hereinafter "<u>Douglas III</u>"), No. 17 CV 6093, 2019 WL 10960255, at *3 (E.D.N.Y. Oct. 10, 2019).

Those who remain in the class and/or join the collective will then have an opportunity to object to the terms of the settlement by "writ[ing] to the Court about why they disagree with the settlement terms."  <u>Id.</u>  By filing a written objection, class/collective members also gain the opportunity to "voice such concerns in person at the Court's fairness hearing."  <u>Id.</u>

Once the opt-in/opt-out period has ended, the parties collect information on the putative collective and class and seek final approval of the settlement, at which point the court conducts a "final fairness hearing."  <u>Marichal v. Attending Home Care Servs., LLC</u>, 432 F. Supp. 3d at 280.

---

[9] Although the FLSA has no specific provision for issuing such notice, the Supreme Court in <u>Hoffman-LaRoche Inc. v. Sperling</u> held that it was appropriate for courts to do so in order to serve the "broad remedial goal" of the FLSA.  493 U.S. 165, 171–74 (1989); <u>see also</u> <u>Sosa v. Caz-59 Express, Inc.</u>, No. 13 CV 4826, 2014 WL 5471256, at *2 (E.D.N.Y. May 28, 2014) (explaining that a district court "has the power to order that notice be given to other potential members of the plaintiff class under the 'opt-in' provision of the [FLSA]"), <u>report and recommendation adopted</u>, 2014 WL 5471456 (E.D.N.Y. Oct. 28, 2014).  For purposes of the class settlement, notice is explicitly required under the Federal Rules.  <u>See</u> Fed. R. Civ. P. 23(c)(2), 23(e)(1).

After hearing from the parties and any objecting class/collective members, the Court must:  (1) make a final finding under Rule 23(e)(2) regarding the fairness, reasonableness, and adequacy of the settlement as it relates to any state-law claims, which also requires consideration of any requests for service/incentive awards or attorney's fees and costs, see Moses v. New York Times Co., 79 F.4th at 244–46; (2) assess, based on either "a full[] record" or the stipulation of the parties, whether the "similarly situated" requirement is satisfied as to all opt-in plaintiffs, see id.; and (3) make a final finding under Cheeks v. Freeport Pancake House, 796 F.3d at 206–07, regarding the fairness of the settlement as it relates to any FLSA claims.  See generally Douglas v. Allied Universal Sec. Servs. (hereinafter "Douglas IV"), No. 17 CV 6093, 2020 WL 6323691, at *3–6 (E.D.N.Y. May 6, 2020) (walking through the final fairness analysis in a hybrid action).  Assuming those requirements are met, the court issues an order approving the settlement as fair, reasonable, and adequate and instructs the Clerk to enter final judgment and close the case.  Id. at *7.

As a result of this two-step structure, class members are afforded their ordinary rights under Rule 23(e), while each opt-in plaintiff is "given an opportunity" to file proof of their consent to join the action on the docket, "affirmatively join the settlement," and be heard regarding the settlement.  Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 280 (citing Brack v. MTA N.Y.C. Transit, No. 18 CV 846, 2019 WL 1547258, at *18–19 (E.D.N.Y. Apr. 9, 2019)).

II.   Conditional Certification of a Rule 23 Settlement Class

The Court turns first to the criteria for certifying a class under Rule 23 of the Federal Rules of Civil Procedure and addresses each of the relevant factors below.[10]

---

[10] Although the above-captioned cases originally proposed classes and subclasses (A+ TAC ¶¶ 76–77; SST TAC ¶¶ 88–89), the Agreement defines a single class for settlement purposes as "Named Plaintiffs, Opt-in Plaintiffs

A.      Rule 23(a)

In assessing whether to certify a class action, for settlement purposes or otherwise, the

Court must consider whether the proposed class satisfies Rule 23(a) of the Federal Rules of Civil

Procedure.  The rule provides that:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if:  (1) the class is so numerous
> that joinder of all members is impracticable; (2) there are questions
> of law or fact common to the class; (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the
> class; (4) the representative parties will fairly and adequately protect
> the interests of the class.

Fed. R. Civ. P. 23(a).

1.      Numerosity

Turning to the first Rule 23(a) factor, numerosity, the proposed class must be so

numerous that joinder becomes impractical.  Fed. R. Civ. P. 23(a)(1).  The standard for

presuming numerosity is forty or more members.  Consolidated Rail Corp. v. Town of Hyde

Park, 47 F.3d 473, 483 (2d Cir. 1995).  In this case, plaintiffs allege that there are more than

forty members of the proposed Rule 23 Class.  (Mem. at 17).  Thus, based on the information

presently available, the Court finds that the proposed class satisfies the standard of numerosity.

2.      Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered

the same injury. This does not mean merely that they have all suffered a violation of the same

provision of the law."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011) (quoting

General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  The common question "must be

---

and all non-exempt employees who were employed by one or more of the Defendants from April 22, 2019 through
the date of execution of the Agreement, who do not opt-out of the Litigation in accordance with the procedures set
forth below."  (Agr. ¶ 1.6).

of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350.

Here, plaintiffs assert that there are several common legal and factual issues. Plaintiffs allege that "[t]he issues in dispute in this case include whether and when Defendants were required to pay Subway Cleaners prevailing wages, daily overtime, holiday premiums, and supplemental benefits and whether [the subcontractor defendants] failed to provide Subway cleaners with accurate wage notices and wage statements." (Mem. at 17). Plaintiffs also allege that other common issues of law include "[w]hether the work performed by the Subway Cleaners require [sic] payment of prevailing wages, and whether the Plaintiffs were required to exhaust their administrative remedies before bringing claims for unpaid prevailing wages." (Id. at 17–18). Plaintiffs further allege that "[i]n the absence of class certification and settlement, each individual class member would be forced to litigate each common issue of fact and law." (Id. at 18). Considering plaintiffs' allegations and the information presently available, the Court finds that there are common legal and factual issues sufficient to satisfy the requirements of Rule 23(a)(2).

### 3.   Typicality

Rule 23(a)(3) requires that the lead plaintiffs' claims be typical of the claims of the class. Typicality has been found "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). Typicality is "usually met irrespective of varying fact patterns which underlie individual claims" so long as the claims of the class representative are typical of the class members' claims. Bourlas v. Davis Law Assocs., 237

F.R.D. 345, 351 (E.D.N.Y. 2006) (quoting D'Alauro v. GC Servs. Ltd. P'ship, 168 F.R.D. at 456–57).

Here, the claims of the named plaintiffs satisfy the requirements of the Rule in that they, like other members of the proposed Rule 23 Class, allege claims based on the same legal and factual circumstances that form the basis of the class members' claims.  Specifically, plaintiffs allege that defendants "failed to pay them prevailing wages, daily overtime, holiday premiums, and supplemental benefits and that [the subcontractor defendants] failed to provide them with accurate wage notices and wage statements." (Mem. at 18).  Based on the information presently available, the Court finds that plaintiffs' claims are sufficiently typical to find that the Rule 23(a)(3) typicality requirement has been satisfied.

### 4. Adequacy of Representation

The Second Circuit has established a two-prong test for assessing whether a proposed class satisfies Rule 23(a)(4), which requires the interests of the class to be adequately represented.  See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig., 827 F.3d 223, 231 (2d Cir. 2016).  First, there must be a showing that class counsel is "qualified, experienced and generally able to conduct the litigation."  Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 19 (W.D.N.Y. 1995) (quoting Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968), vacated on other grounds, 417 U.S. 156 (1974)).  Second, the class members' interests may not be "antagonistic" to one another.  County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd, 907 F.2d 1295 (2d Cir. 1990).

Here, the proposed Rule 23 Class would be represented by the Law Office of Christopher Q. Davis, PLLC.  (Sweeney Decl. ¶ 1).  Plaintiffs' counsel, Brendan Sweeney, a partner at the Law Offices of Christopher Q. Davis, PLLC, asserts that his firm "focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action

litigation, wage and hour and discrimination claims, as well as contract and severance negotiations." (Id. ¶ 2).  Further, Mr. Sweeney claims he has "settled or participated in the settlement negotiations of more than 25 collective and/or class actions." (Id. ¶ 66).  According to Mr. Sweeney's declaration, his co-lead counsel, Christopher Q. Davis, has been appointed class counsel on more than seven cases while working with his current firm. (Id. ¶ 81).  At previous firms, Mr. Davis has been appointed class counsel or served as lead counsel for a firm appointed as class counsel on at least six occasions. (Id. ¶¶ 81–82, 84).

Considering counsel's submissions and the amount of work done in connection with this proposed settlement, based on the information presently available, the Court finds, for purposes of the Rule 23(a)(4) analysis, that counsel is sufficiently qualified and experienced to competently represent the interests of the proposed class.

As for the second part of the analysis, there do not appear to be any conflicts between named plaintiffs and other members of the Rule 23 Class.  For a potential or actual conflict to defeat certification, it must be "fundamental." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citations omitted).  Based on the information presently available, the named plaintiffs do not appear to have any interests that are fundamentally antagonistic to or at odds with those of the class members; rather, their interests appear to be aligned with those of the other class members. (See Mem. at 19).  Moreover, the Court is unaware of any potential, fundamental conflict of interest between plaintiffs and the class members. (Id.)  Thus, based on the nature of plaintiffs' and the putative class members' claims and the information currently before the Court,  the Court finds that the named plaintiffs' claims are so interrelated with those of the other potential Rule 23 class members that they will be adequate class representatives.

B.     Rule 23(b)(3)

In addition to satisfying the Rule 23(a) prerequisites, plaintiffs also must satisfy one of the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions, and a class action is superior to other methods for bringing suit.  Fed. R. Civ. P. 23(b); see also Amchem Prods., Inc. v. Windsor, 521 U.S. at 614; Annunziato v. Collecto, Inc., 293 F.R.D. at 334.  Here, the parties seek to certify a Rule 23(b)(3) class.  (Mem. at 19–20).  At this stage, the court need only determine whether the requirements of Rule 23(b) are "likely" to be satisfied.  Rosenfeld v. Lenich, 2021 WL 508339, at *8.

Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class.  Fed. R. Civ. P. 23(b)(3); see also Amchem Prods, Inc. v. Windsor, 521 U.S. at 623.  In assessing the predominance requirement, courts focus on whether there are common questions related to liability.  See Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 81 (2d Cir. 2015).  Plaintiffs need not "prove that each element of her claim is susceptible to classwide proof," and "individual questions need not be absent."  Id.  Even if there are defenses that affect class members differently, that alone "does not compel a finding that individual issues predominate over common ones."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2d Cir. 2001), overruled on other grounds, In re IPO Secs. Litig., 471 F.3d 24 (2d Cir. 2006).

In the instant case, plaintiffs assert that the following questions predominate "over any factual or legal variations among Class Members":  (1) whether defendants failed to pay plaintiffs prevailing wages, overtime, holiday premiums, and supplemental benefits, and (2)

24

whether the subcontractor defendants failed to provide plaintiffs with proper wage notices and

wage statements.  (Mem. at 20).  The Court agrees.  While there may be individualized issues of

damages, based on the information presently available, the Court finds that common questions

predominate in this case and that plaintiffs have therefore satisfied the first requirement of Rule

23(b)(3).  See Torres v. Gristede's Corp., No. 04 CV 3316, 2006 WL 2819730, at *16 (S.D.N.Y.

Apr. 9, 2010) (finding that a common practice of denying overtime pay predominates over

individual calculations of damages that defendants may owe if they are found liable).

Additionally, to satisfy Rule 23(b)(3), plaintiffs must demonstrate that "a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(3).  In determining whether the superiority requirement has been satisfied,

courts must consider:

> (A)     the class members' interests in individually controlling the
>         prosecution or defense of separate actions;
>
> (B)     the extent and nature of any litigation concerning the
>         controversy already begun by or against class members;
>
> (C)     the desirability or undesirability of concentrating the
>         litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D); see also Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d at 82

(noting that although these four factors "structurally[] apply to both predominance and

superiority, they more clearly implicate the superiority inquiry" (citing Vega v. T–Mobile USA

Inc., 564 F.3d 1256, 1278 (11th Cir. 2009))).  As the Second Circuit has explained it, the Court

must conclude that "a class action would achieve economies of time, effort, and expense, and

promote uniformity of decision as to persons similarly situated, without sacrificing procedural

fairness or bringing about other undesirable results." Brown v. Kelly, 609 F.3d 467, 483 (2d Cir. 2010) (citation and internal quotation marks omitted).

Here, plaintiffs allege that class members have limited financial resources, which would presumably impede their ability to bring lawsuits individually.  (Mem. at 20).  Plaintiffs also claim to be "unaware of any pending individual lawsuits filed by any Class Member arising out the same allegations."  (Id.)  Additionally, plaintiffs assert that the alleged conduct occurred within the Eastern District of New York, and therefore, concentrating litigation in this Court is preferred.  (Id.)

The Court agrees with plaintiffs' assessment of the applicability of the Rule 23(b)(3) factors to this case, as the relatively small value of each individual claim, the limited resources of each class member, the lack of any pending individual suits concerning the allegations in this action, and the fact that the conduct occurred within this district all support a finding that the superiority requirement has been satisfied.  Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 617 (S.D.N.Y. 2012) (considering the limited resources of class members and the place where the alleged conduct occurred in support of finding that class action is a superior method of resolution).  Further, proceeding as a class will preserve judicial resources by consolidating common issues of fact and law, and avoid repetitive proceedings and inconsistent adjudications. See Aponte v. Comprehensive Health Mgmt., No. 10 CV 4825, 2011 WL 2207586, at *11 (S.D.N.Y. June 2, 2011).  Thus, based on the information presently available, the Court finds that a class action is the superior method of resolution in this case.

C.   Scope of the Class

Notwithstanding the Court's analysis above and conclusion that certification of a Rule 23(b)(3) settlement class is likely appropriate in this case, there are two potential complications that the Court has not yet addressed.

26

First, by releasing all state-law claims against the Released Entities, the Agreement, if approved, would settle the individual retaliation claims brought under state law by a subset of the Named Plaintiffs in the SST Action.  (Agr. ¶ 4.1(A) (releasing all Class Members' "State Law Claims"); see also id. ¶ 1.33 (defining "State Law Claims" broadly to include "any and all . . . causes of action . . . that could have been, or might be asserted in any court . . . under the New York Labor Law")).  The Agreement does not appear to provide a larger payment to the Named Plaintiffs or to any other Class Member who releases their individual retaliation claims.  Rather, these Class Members would receive the same payments that they would have received had they not possessed individual retaliation claims.[11]  The absence of additional compensation for the release of these retaliation claims may well impact the settlement fairness analysis discussed in more detail below.  See Fed. R. Civ. P. 23(e)(2)(D) (requiring courts to consider whether "the proposal treats class members equitably relative to each other" when assessing the fairness of a proposed class settlement).

Moreover, given that the factual underpinnings of these claims may differ from those relevant to the wage and hour claims (see SST TAC ¶¶ 365–385), the court must consider how the inclusion of these claims in the Agreement impacts the propriety of class certification.  Specifically, without knowing the likelihood of whether any other members of the proposed Class have retaliation claims, the Court cannot assess the impact of these claims on the overall cohesion of the proposed Class or whether a subclass is necessary to address factual disparities relevant to the questions of commonality, typicality, or predominance.  The ability to conduct such an analysis is further complicated by the operation of the terms of the Agreement, which

---

[11] As explained above, a Named Plaintiff, regardless of whether he brought an individual retaliation claim, would receive a $10,000 Service Award and a *pro rata* share of the Net Settlement Amount calculated based on the number of weeks he worked for defendants.

provide for the release of any retaliation claims, irrespective of when they arose and irrespective of whether those claims are known at the time of release.  (Agr. ¶ 1.33).  Additionally, because the Court lacks information (in the form of affidavits from the named plaintiffs or otherwise) about the involvement of the individual plaintiffs with retaliation claims in the settlement negotiation process, the Court cannot fully assess whether unnamed class members with such claims were adequately represented in the settlement negotiations or if, instead, the failure to assign any value to the released retaliation claims is the consequence of some currently unidentifiable conflict of interest.

Second, while the Agreement explicitly excludes from its release certain claims brought by six of the Named Plaintiffs which are currently pending at the New York City Commission on Human Rights, the Agreement does not specify what these claims are or whether any of them are individual retaliation claims.  (Id. ¶ 4.1(C).  Further, with the exception of Krystal Vasquez, there is no overlap between the six plaintiffs whose individual claims are excluded from the release and those who brought individual retaliation claims in the SST Action.  (Id.; SST TAC ¶¶ 365–85).  Absent additional information on the claims carved out of the Agreement, the Court cannot assess their impact on the certifiability of the class or the fairness of the proposed settlement.

Should the parties renew their motion, they should specifically address the Agreement's release of individual retaliation claims, provide further details on the claims excluded from the Agreement, and explain how these claims fit into the settlement approval and class certification frameworks.

III.   Preliminary Approval of the Proposed Class Settlement

To grant preliminary approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion."  Joel A. v. Giuliani, 218 F.3d at 138 (citations omitted); see Fed. R. Civ. P. 23(e).  At

this stage, the Court must complete an "initial evaluation" of the procedural and substantive fairness of the settlement under Rule 23(e). Torres v. Gristede's Operating Corp., 2010 WL 2572937, at *2; see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 330 F.R.D. at 28 n.21 (noting that preliminary approval turns on "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class" (emphasis added)); In re Traffic Executive Ass'n, 627 F.2d 631, 634 (2d Cir. 1980) (noting that at the preliminary approval stage, there need only be "probable cause to submit the [settlement] to class members and hold a full scale hearing as to its fairness").

In assessing the fairness, reasonableness, and adequacy of a settlement, the court must assess four factors pursuant to Rule 23(e)(2):  whether (1) "the class representatives and class counsel have adequately represented the class," (2) "the proposal was negotiated at arm's length," (3) "the relief provided for the class is adequate . . . ," and (4) "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  "The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." Moses v. New York Times Co., 79 F.4th at 242–43 (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment).

"When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness."  D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).  However, judicial policy still favors the settlement and compromise of class actions.  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116–17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004).  Assessing each of the relevant factors, the Court concludes that it is unable to make a determination regarding the fairness of the proposed settlement at this time.

29

A.    Procedural Fairness

As noted above, in assessing the procedural fairness of a class action settlement, courts

must assess whether (1) "the class representatives and class counsel have adequately represented

the class," and (2) "the proposal was negotiated at arm's length."  Fed. R. Civ. P. Rule 23(e)(2).

The Court must assess these factors holistically.  Moses v. New York Times Co, 79 F.4th at 242–

43.

Plaintiffs claim that the Agreement "was reached after extensive investigation, discovery,

and [sic] negotiation, and mediation."  (Mem. at 1).  Moreover, plaintiffs assert that the

Agreement "is the product of more than a year of arm's length, good faith negotiations, which

were conducted with the assistance of two mediators."  (Id.)  Additionally, the parties'

involvement in mediation in this case "helps to ensure that the proceedings were free of collusion

and undue pressure."  D'Amato v. Deutsche Bank, 236 F.3d at 85 (citing County of Suffolk v.

Long Island Lighting Co., 907 F.2d at 1323).  These factors support a finding that class

representatives and counsel "have adequately represented the class" and that the Agreement was

negotiated at arm's-length.

However, plaintiffs' Memorandum does not directly address the procedural factors set

out in Rule 23(e)(2).  (See Mem. at 9–11).  Rather, plaintiffs seek to invoke the "presumption of

fairness, adequacy, and reasonableness" that Courts have previously held "may attach to a class

settlement reached in arm's length negotiations between experienced, capable counsel after

meaningful discovery."  (Id. at 10).  It is true that courts in this Circuit historically have

presumed that settlements were procedurally fair when they were "achieved through arms-length

negotiations by counsel with the experience and ability to effectively represent the class's

interests."  Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing

Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also In re Nissan

30

Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013 WL 4080946, at *4 (S.D.N.Y. May

30, 2013).  However, the Second Circuit recently repudiated this presumption in light of the 2018

codification of the four factors in Rule 23(e)(2).  See Moses v. New York Times Co., 79 F.4th at

243 (concluding that "Rule 23(e)(2) prohibits courts from applying a presumption of fairness to a

settlement agreement based on its negotiation at arm's length").  Thus, the Court is unable to find

that the proposed settlement is procedurally fair as required by Rule 23.  If they renew their

motion, plaintiffs should revise their Memorandum and provide the analysis of the Rule 23(e)(2)

factors in accordance with the Second Circuit's decision in Moses v. New York Times Co., 79

F.4th 235.

     B.     Substantive Fairness

     The Court next turns to the question of substantive fairness.  In City of Detroit v. Grinnell

Corp., the Second Circuit enumerated nine factors to guide courts in evaluating the substantive

fairness of a proposed settlement:

> (1) The complexity, expense and likely duration of the litigation; (2)
> the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks of
> establishing liability; (5) the risks of establishing damages; (6) the
> risks of maintaining the class action through the trial; (7) the ability
> of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the Settlement Fund in light of the best possible
> recovery; and (9) the range of reasonableness of the Settlement Fund
> to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d at 463 (internal citations omitted); see also D'Amato v. Deutsche Bank, 236 F.3d at 86;

Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4

(E.D.N.Y. Oct. 4, 2012).

     Courts in this Circuit traditionally have applied the Grinnell factors to assess the

substantive fairness of class action settlements.  Moses v. New York Times Co., 79 F.4th at 244

(citing Charron v. Wiener, 731 F.3d 241, 271 (2d Cir. 2013)).  However, the 2018 amendment to

Rule 23(e)(2) codified the four factors which courts must apply when determining whether a settlement is fair, reasonable, and adequate.  Id. at 242.  As noted above, "[t]he first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement."  Moses v. New York Times Co., 79 F.4th at 242–43 (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment).  Therefore, when assessing the substantive fairness of a settlement, "the rule now requires courts to expressly consider two core factors" set out in Rule 23(e)(2): the adequacy of relief provided to a class and the equitable treatment of class members."  Id. at 244.  Further, when applying these factors, the Court must "'review both the terms of the settlement agreement and any fee award encompassed in a settlement agreement' in tandem."  Id. (quoting Fresno Cnty. Emps.' Ret. Ass'n v. Isaacson/Weaver Family Trust, 925 F.3d 63, 72 (2d Cir. 2019)).  The Second Circuit did not direct courts to stop applying the Grinnell factors, but rather acknowledged that "the factors outlined in Grinnell and the revised Rule 23(e)(2) largely overlap."  Id.  Therefore, the Court will analyze the substantive fairness of the Agreement through both the Grinnell factors and the procedural factors of Rule 23(e)(3).[12]

### 1.    Adequacy of Relief Provided

Pursuant to Rule 23(e)(2), the Court must assess whether the relief that the Agreement provides to the class is adequate.  Fed. R. Civ. P. 23(e)(2)(C).  In doing so, the Court must take into account the following:  (1) "[T]he costs, risks, and delay of trial and appeal," (2) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (3) "the terms of any proposed award of attorney's fees,

---

[12] As with their arguments regarding the procedural fairness of the proposed settlement, plaintiffs' arguments regarding substantive factors fail to account for the changes brought about by Moses.  (See Mem. at 11–15).  Given the substantial overlap between the Grinnell factors and those set out in Rule 23(e)(2), the Court proceeds with its analysis of the substantive fairness of the proposed settlement to the extent possible based on the information provided thus far.  However, any renewed motion should include a revised memorandum of law that adheres to Moses and the caselaw that has followed.

including timing of payment," and (4) "any agreement required to be identified under Rule 23(e)(3)." Id.  The Court addresses each in turn.

a.   Costs, Risks, and Delay

First, the Court must assess the "costs, risks, and delay of trial and appeal," which "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." Mikhlin v. Oasmia Pharm. AB, No. 19 CV 4349, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (quoting In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 330 F.R.D. at 36); see also Fed. R. Civ. P. 23(e)(2)(C)(i). The Court concludes that this factor also subsumes the third, eighth, and ninth Grinnell factors— the "stage of the proceedings and the amount of discovery completed," the "range of reasonableness of the Settlement Fund in light of the best possible recovery," and the "range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation." 495 F.2d at 463.  The Court addresses each of these considerations in turn.

According to plaintiffs, "continued litigation, without settlement, would result in additional unnecessary expense and delay." (Mem. at 12).  Specifically, plaintiffs note that proceeding with the litigation would require, among other things, significant discovery, extensive testimony, a lengthy process of compiling evidence, and the use of substantial judicial resources. (Id.)  Plaintiffs also contend that any judgment resulting from a trial would likely be appealed, which would further extend the duration of the litigation.  (Id.)  Instead, plaintiffs argue that the Agreement "makes monetary relief available to class members in a prompt and efficient manner."  (Id.)

Plaintiffs also argue that, while they believe their case is strong, they acknowledge that "there is still considerable risk" if the case were to proceed to trial.  (Id. at 13).  Plaintiffs note

that several defendants have moved to compel arbitration of plaintiffs' claims.  (Id. at 13–14).

Further, plaintiffs assert that defendants would have filed motions to dismiss or motions for

summary judgment "based on the arguments that (1) the work performed by the Plaintiffs did not

require payment of prevailing wages, and (2) the Plaintiffs failed to exhaust their administrative

remedies before bringing claims for unpaid prevailing wages."  (Id. at 14).  Further, plaintiffs

acknowledge that establishing and maintaining a class through trial would not be simple, as there

is a "significant dispute over the scope of the class."  (Id.)  Having considered plaintiffs'

allegations and arguments, the Court finds that this factor supports the proposed Agreement

based on the information presently available

      The Court turns next to what was previously the third Grinnell factor: "the stage of the

proceedings and the amount of discovery completed."  495 F.2d at 463.   Courts consider this

factor to ensure "that counsel for plaintiffs have weighed their position based on a full

consideration of the possibilities facing them and the risks of maintaining the class action

through trial."  Klein ex rel. Ira v. PDG Remediation, Inc., No. 95 CV 4954, 1999 WL 38179, at

*3 (S.D.N.Y. Jan. 28, 1999) (internal quotation marks and citations omitted).  Plaintiffs assert

that "the Parties have completed enough discovery to recommend settlement."  (Mem. at 12).

Specifically, the parties have exchanged discovery concerning the formation of arbitration

agreements and in anticipation of mediation sessions.  (Id. at 13).  Through this process,

plaintiffs' counsel deposed a witness and reviewed defendants' email messages, documents, and

other data.  (Id.)  Further, the parties reached the proposed Agreement through a mediation

session held before a neutral mediator.  (Id. at 6).  Considering the foregoing, the Court finds that

the stage of the proceedings supports the proposed Agreement based on the information

presently available.  See Levinson v. About.Com Inc., No. 02 CV 2222, 2010 WL 4159490, at

*3 (S.D.N.Y. Oct. 7, 2010) (finding that settlement negotiations overseen by a mediator supported settlement under the third Grinnell factor).

As for the range of reasonableness of the proposed settlement, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination" under this factor. In re Agent Orange Prod. Liab. Litig., 597 F. Supp. 740, 762 (E.D.N.Y. 1984), aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381, 818 F.2d 145 (2d Cir. 1987). What constitutes a reasonable settlement amount "is not susceptible of a mathematical equation yielding a particularized sum," but turns on whether the settlement falls within "a range of reasonableness." In re PaineWebber Ltd. Partnerships Litig., 171 F.R.D. 104, 130 (S.D.N.Y.), aff'd sub nom. In re PaineWebber Inc. Ltd. Partnership Litig., 117 F.3d 721 (2d Cir. 1997) (internal citations and quotation marks omitted). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." Johnson v. Brennan, No. 10 CV 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982)). This flows from the fact that "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." In re Agent Orange Prod. Liab. Litig., 597 F. Supp. at 762. "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." City of Detroit v. Grinnell Corp., 495 F.2d at 455; see In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 340 (E.D.N.Y. 2010).

Here, the parties have agreed to a Gross Settlement Amount of $1,250,000, which "amounts to 23% of Plaintiffs' maximum estimated damages . . . ." (Mem. at 15). Further, as

noted above, plaintiffs would incur significant risks if they were to proceed with litigating these cases.  As such, based on the information presently available, the Court finds that the range of reasonableness of the proposed settlement favors the Agreement and, in light of the analysis above, concludes that the "costs, risks, and delay of trial and appeal" likely favor a finding that the relief provided by the proposed settlement is adequate for purposes of Rule 23(e)(2)(C).

### b.  Effectiveness of Relief Distribution

Second, the Court must assess the effectiveness of the Agreement's proposed method of distributing relief to class members, including the method that members' claims would be processed.  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A plan for allocating settlement funds need not be perfect, and need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  Villa v. Highbury Concrete Inc., No. 17 CV 984, 2022 WL 19073649, at *4 (E.D.N.Y. Nov. 25, 2022) (quoting cases) (internal quotation marks omitted).  As discussed above, the proposed method for calculating each class member's *pro rata* share of the Net Settlement Amount is a formula based on the number of weeks each class member worked for defendants.  (Agr. ¶ 3.2).  To administer this process, the parties propose that the Court appoint RG/2 Claims Administration, LLC, which plaintiffs allege is "a full-service legal settlement administration firm with experience on thousands of settlement administration projects."  (Proposed Order ¶ 14).  Based on the information currently available, the Court finds that the Agreement's proposed method of distributing relief weighs in favor of a finding that the relief is adequate.

### c.  Proposed Attorney's Fees

Third, the Court must assess the terms of any proposed award of attorney's fees, including timing of payment.  Fed. R. Civ. P. 23(e)(2)(C)(iii); see also Moses v. New York Times Co., 79 F.4th at 243–46, 256–57 (holding, in light of the revisions to Rule 23(e), that it is

reversable error for courts to evaluate the appropriateness of the requested attorney's fees independently from their analysis of the substantive fairness of the settlement).  "When analyzing the proposed agreement for final approval, this Court will review Plaintiffs' application for attorneys' fees, taking into account the interests of the class."  Hart v. BHH, LLC, 334 F.R.D. 74, 79 (S.D.N.Y. 2020) (citing Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995)).  As discussed above, the Agreement allows class counsel to petition the court for attorney's fees and costs up to an amount that is approximately one third of the total value of the Gross Settlement Fund.  (Agr. ¶ 3.1(A)).  However, neither plaintiffs' Motion nor any of its accompanying filings provide the Court with the information required to conduct a lodestar analysis.  Considering the sheer size of the proposed attorney's fees and costs, the Court believes that a lodestar analysis is imperative to assessing the substantive fairness of the settlement.  At this time, the Court is unable to analyze the reasonableness of the proposed attorney's fee amount.  Should the parties renew their motion, they should provide the Court with the information needed to conduct a lodestar analysis, including contemporaneous billing records, information on counsel's experience, and authority supporting counsel's hourly rate.

Moreover, as noted above, the Agreement contains a clear-sailing clause, which, if approved, would bar defendants from contesting class counsel's request for attorney's fees and costs at the final fairness hearing as long as the fees and costs requested do not exceed the amounts allowed by the Agreement.  (Id. ¶ 3.3).  Courts in this circuit have expressed concerns with the inclusion of clear-sailing clauses in class action settlement agreements, particularly when agreements also contain reversionary clauses.  See Tagaeva v. BNV Home Care Agency, Inc., 2019 WL 13220138, at *4; Cunningham v. Suds Pizza, Inc., 290 F. Supp. 3d 214, 223–24 (W.D.N.Y. 2017).  In Cunningham v. Suds Pizza, Inc., the court noted that clear-sailing clauses

"by [their] nature deprive[] the court of the advantages of the adversary process."  290 F. Supp.

3d at 223 (citing Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 525 (1st Cir.

1991)).  Further, defendants are unlikely to "gratuitously accede" to the inclusion of a clear-

sailing clause "without obtaining something in return."  Id. (citing Malchman v. Davis, 761 F.2d

893, 908 (2d Cir. 1985) (Newman, J. concurring), abrogated on other grounds, Amchem Prod.,

Inc. v. Windsor, 521 U.S. 591).  "That 'something in return' might logically be a reversionary

clause."  Id.  This "imposes on the Court a heightened duty to scrutinize the uncontested fee

request to ensure that the interests of the plaintiff have not been compromised."  Tagaeva v.

BNV Home Care Agency, Inc., 2019 WL 13220138, at *4 (citing Cunningham v. Suds Pizza,

Inc., 290 F. Supp. 3d at 224).  Here, the Agreement contains both a clear-sailing clause and a

reversionary clause.  (Agr. ¶¶ 3.3, 3.5(F)).

Without further information justifying the proposed attorney's fees and costs, the Court is

unable to "scrutinize the uncontested fee request," and confirm that the proposed attorney's fees

and costs, in conjunction with the clear-sailing and reversionary clauses, are reasonable.

Therefore, based on the information presently available, the Court is unable to properly consider

the proposal for attorney's fees, as required, when assessing the substantive fairness of the

Agreement.

### d.    Rule 23(e)(3) Agreements

Lastly, in assessing the substantive fairness of the settlement, the Court must take into

account "any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P.

23(e)(2)(C)(iv).  Rule 23(e)(3) requires that "the parties seeking approval must file a statement

identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  The

parties have not filed any statements disclosing other agreements, and, therefore, based on the

information presently available, this factor is neutral in the Court's assessment of substantive fairness.

Based on the information presently available, the Court is unable to conclude that the "relief provided for the class is adequate," particularly, due to an inability to conduct a lodestar analysis of the proposed attorney's fees and costs.

### 2.    Equitable Treatment of Class Members

The second factor of Rule 23(e)(2) that the Court must apply to assess the substantive fairness of a settlement is whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). At the center of that question is "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Moses v. New York Times Co., 79 F.4th at 245 (citing Fed. R. Civ. P. 23(e)(2), Advisory Committee's Note to 2018 Amendment).

Here, the Agreement sets forth a formula that calculates each class member's *pro rata* share of the Net Settlement Amount based exclusively on the number of weeks each class member worked for defendants. (Agr. ¶ 3.2). As such, class members' settlement amounts would differ in size from one another, but these differences would be based on a formula designed to compensate class members based on the amount of time they would have encountered the alleged state law violations. This approach therefore appears likely to satisfy the requirements of Rule 23(e)(2)(D).

However, the Court cannot draw an ultimate conclusion regarding the equitable treatment requirement at this time. First, as noted above, plaintiffs have not provided the Court with sufficient information to assess how, if at all, the release of retaliation claims by only a subset of the Named Plaintiffs and Class Members impacts the equity of the proposed settlement. See pp.

39

26–28 supra.  Second, the Agreement provides service awards to the Named and Opt-in Plaintiffs in the amounts of $5,000 and $2,500, respectively.  (Mem. at 7; see also Agr. ¶ 3.2(B)).  In Moses, the Second Circuit explicitly noted that while such awards are not prohibited by Rule 23(e)(2)(D), "the existence and extent of incentive payments is [nevertheless] relevant to whether class members are treated equitably relative to each other."  79 F.4th at 245.  Plaintiffs' memorandum provides only a boilerplate justification for these awards (Mem. at 7), and the information provided lacks sufficient detail for this Court to assess whether the proposed service awards appropriately "protect[] the interests of class representatives who play an active role in the litigation . . . from having absent class members free ride on their efforts" or if instead the awards "are excessive compared to the service provided by the class representative" or are otherwise "unfair to the absent class members," Moses v. New York Times Co., 79 F.4th at 245.

If they renew their motion, plaintiffs should revise their Memorandum and provide an adequate analysis of Rule 23(e)(2)(D) equitable treatment requirement.

### 3.   Remaining Grinnell Factors

There are two remaining Grinnell factors that do not fit neatly into the analysis above. Neither Rule 23(e)(2) nor Moses require the Court to consider those factors.  Nevertheless, the Court does so briefly, as nearly a half-century of caselaw affirms that they are relevant to the question of whether the proposed settlement is substantively fair.

First is the "reaction of the class to the settlement."  City of Detroit v. Grinnell Corp., 495 F.2d at 463.  The reaction of the class to the settlement may only be evaluated after notice of the proposed settlement has been sent to the class and the time for objections has passed.  In this case, notice of the proposed settlement has not yet been distributed to the class, as the class has not yet been certified.  Plaintiffs argue that because named and opt-in plaintiffs have expressed support for the Agreement, this factor should weigh in favor of preliminary approval.  The Court

disagrees.  As notice has not yet been distributed to the proposed class, this factor is neutral. Parker v. City of New York, No. 15 CV 6733, 2017 WL 6375736, at *6.

Second is "the ability of the defendants to withstand a greater judgment."  According to plaintiffs, "defendants do not claim that they could not withstand a greater judgment."  (Mem. at 15).  However, plaintiffs explain that even if defendants could withstand a greater judgment, "their ability to do so 'standing alone, does not suggest that the settlement is unfair.'" (Id. (quoting Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013))).  Plaintiffs conclude, therefore, that this factor is neutral.  (Id. at 15).  Based on the information presently available, the Court agrees with plaintiffs' conclusion and finds that this factor is neutral.

IV.   Issues with the Check-Cashing Structure

Having evaluated the Agreement with respect to the requirements of a class action settlement under Rule 23, the Court now must evaluate the Agreement with respect to the requirements of the FLSA.  As noted above, when named plaintiffs move to conditionally certify a collective, the central issue that the Court must determine is whether members of the putative collective are "similarly situated" to the named plaintiff "with respect to whether a FLSA violation has occurred."  Ahmed v. T.J. Maxx Corp., 103 F. Supp. 3d 343, 346 (E.D.N.Y. 2015); see also Myers v. Hertz Corp., 624 F.3d at 544–45, 555.  As the Second Circuit recently explained, "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs . . . share a similar issue of law or fact material to the disposition of their FLSA claims" insofar as they "were victims of a common policy or plan that violated the law."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 515–16.  The commonality requirement for certification of a class under Rule 23 imposes a "much higher threshold" than the "similarly situated" test for certification of a collective under the FLSA.  Myers v. Hertz Corp., 624 F.3d at 556.  Thus, although plaintiffs here have not advanced a detailed legal justification for the preliminary certification of their

41

proposed FLSA collective, the Court concludes, based on the information presently available, that plaintiffs' proposed collective meets the "similarly situated" requirement given the Court's conclusion that the proposed collective satisfies the commonality requirement for class certification under Rule 23.

Next, the Court turns to a fundamental flaw in the structure of the proposed settlement as set out in the Agreement that, for the reasons set forth below, ultimately precludes conditional certification of the collective and preliminary approval of the proposed settlement. Under the terms of the Agreement, after preliminary approval and conditional certification of the collective, the settlement administrator is to mail notice to all class and potential collective members, who will then have sixty days from the mailing date to opt out of the class. (Mem. at 8). Following final approval, the administrator mails settlement checks to all class members who did not opt out. (Id.) The back of the checks are to include the following language:

> "By endorsing, signing, depositing, and/or negotiating this check, I consent to join the Litigation entitled *Krystal Vasquez, et al. v. Staff Support Services, et al.* and *Krystal Vasquez, et al. v. A+ Student Staffing LLC, et al.* and I agree to the Settlement Agreement and the releases therein. As such, I hereby release Defendants and the Released Entities (who are identified in the Settlement Agreement) from any and all contractual and wage-related claims under the Fair Labor Standards Act, any other federal wage and hour law, the New York Labor Law, and/or any other applicable state, city, or local wage and hour law, rule or regulation governing the payment of wages including such claims brought or which could have been brought in the litigation."

(Id.; see also Agr. ¶ 4.1(D)). In short, any class member who did not opt out of the class and who cashes his check would thereby automatically opt in to the collective action and, in doing so, would be consenting to the settlement and releasing defendants from any and all FLSA claims. (Agr. ¶ 4.1). The check-cashing structure proposed by the parties is impermissible under the FLSA for several reasons.

First, as currently written, the Agreement would have members of the collective opting in to the action only *after* the settlement has been approved following a final fairness hearing.  The Agreement specifically provides that at the final fairness hearing, the parties "will request that the Court, among other things . . . dismiss FLSA Claims for all Class Members who endorsed, signed, deposited, and/or negotiated their settlement check(s)."  (See id. ¶ 2.10(B)).  If the Court approves the settlement, a Final Approval Order, which includes "dismissal of the Litigation with prejudice," will be entered (see id. ¶ 1.15 (defining the Court's eventual "Final Approval Order" as one that includes "dismissal of the Litigation with prejudice")), and then the settlement checks are sent to the collective members, *after* the case has been dismissed, (see id. ¶ 4.1(B) (stating that the collective member's FLSA claims are prospectively released "[u]pon the Final Approval Order being issued")).  Under the proposed procedure, collective members will receive their checks after the Final Approval Order, including dismissal, is entered, only then to "opt in" to the now-dismissed collective action if they decide to cash their checks.  The proposed procedure runs afoul of the FLSA's unequivocal mandate:  "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b); see also Aboah v. Fairfield Healthcare Servs., Inc., 2021 WL 6337748, at *5 (stating that in a FLSA action,"[n]o employee may become a plaintiff until he or she files a written consent on the docket").

At the most basic level, the "FLSA does not allow the cashing of a settlement check to serve as an employee's consent to become a collective member," even when the check to be endorsed includes opt-in language.  Douglas I, 371 F. Supp. 3d at 85.  More importantly, under the parties' proposed approach, "the recipients of the settlement checks would have no litigation

to opt in to;" the case will have been resolved and dismissed well before they have an opportunity to cash their checks.  Id. at 87.  As one judge in this District has explained it, this creates a double incongruity of "the Court dismissing claims of individuals not before it, and then employees opting into an action to assert and settle claims they no longer have," as their claims have already been dismissed.  Douglas v. Allied Universal Sec. Servs. (hereinafter, "Douglas II"), 381 F. Supp. 3d 239, 241 (E.D.N.Y. 2019) (citing Chen v. XpresSpa at Terminal 4 JFK LLC, No. 15 CV 1347, 2018 WL 1633027, at *6 (E.D.N.Y. Mar. 30, 2018)).  This flaw is fatal, and it cannot be resolved by way of accounting for each of the collective members *after* the issuance of a final approval order.  Id. at 243 (rejecting an attempt to justify a check-cashing structure by filing a stipulation six months after checks are mailed with the names of all individuals who cashed their checks).

Section 216(b)'s plain language permits no exception to the opt-in requirement, and for good reason.  Said requirement is not a mere technicality but, rather, a means of ensuring that employees remain in control of their claims.  In the class action context, our legal system has long accepted the need to sacrifice individual litigants' right to fully control their own claims in the name of procedural efficiency.  See Charles A. Wright & Arthur Miller, Fed. Prac. & Proc. § 1751 (4th Ed.).  We have not accepted that same tradeoff when it comes to FLSA claims.  To the contrary, Congress saw fit to require that individuals in multi-party FLSA suits not simply be absentee members of a collective whose interests are represented by proxy but, rather, fully fledged litigants with the same rights and autonomy as any named plaintiff.  Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d 264, 278 (S.D.N.Y. 2019) (stating that "in an FLSA collective action, every plaintiff who opts in to a collective action has party status" and that "aggrieved workers act as a collective of individual plaintiffs with individual cases").  Thus,

44

"Rule 23 and [Section] 216(b) serve fundamentally different purposes."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 519; see also Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 279 (noting that class and collective actions "[are] not . . . comparable form[s] of representative action" (quoting Pettenato v. Beacon Health Options, Inc., 425 F. Supp. 3d at 279)).  Whereas "Rule 23 provides a general procedural mechanism for the resolution of claims on a class-wide basis subject to the sound discretion of the district court," Section 216(b)'s collective action provision is little more than a streamlined, non-discretionary joinder mechanism "tailored specifically to vindicating federal labor rights."  Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 519–20; see generally Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 249 (2d Cir. 2011) (recognizing the inherent difference and "conflict between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23").

Once Section 216(b) is understood in this manner, it is patently clear why the proposed settlement structure must fail.  No other joinder mechanism known to our legal system would permit the result that the parties seek here.  Indeed, it would be absurd for two parties to ask a court to bless a settlement wherein they agree to resolve and release not only their own claims, but also the claims of anyone who files a meritorious Rule 20 joinder motion within 90 days of the court's dismissal of the action.  There is no reason, nor statutory basis, to abide such an arrangement here.  Whether a proposed collective consists of two employees or two hundred, the Court cannot ignore the plain language of Section 216(b) and sacrifice the protections it affords individual workers in the name of securing the efficiencies that are the hallmark of Rule 23 class actions, not FLSA collective actions.[13]

---

[13] The Court also notes that the fact that the parties seek to certify a hybrid collective/class action does not mitigate the issues inherent in the check-cashing scheme, as even in such hybrid actions, FLSA claims cannot be resolved in the aggregate under Rule 23.  See, e.g., Aboah v. Fairfield Healthcare Services, Inc., 2021 WL 6337748, at *6 (citing Scott v. Chipotle Mexican Grill, Inc., 954 F.3d at 518).

Second, even if Section 216(b) did not itself bar the proposed settlement structure, this Court would nonetheless deny preliminary approval of the collective on the ground that, because the case is fully settled before the collective members opt in to the litigation, the settlement impermissibly seeks to resolve their claims without their assent.  "While consent to a settlement may be inferred in a class action from the class member's failure to opt-out, consent from silence is insufficient for an employee who is a party to a collective action.  That is, the named plaintiff and his counsel in a collective action cannot settle a case on behalf of an opt-in plaintiff: the affirmative assent of each opt-in plaintiff—as a party to the case—is required."  Marichal v. Attending Home Care Servs., LLC, 432 F. Supp. 3d at 279 (citing Hood v. Uber Techs., Inc., No. 16 CV 998, 2019 WL 93546, at *3 (M.D.N.C. Jan. 3, 2019), aff'd, 780 F. App'x 25 (4th Cir. 2019)).

Plaintiffs' counsel purported to sign the Agreement on behalf of "the Named Plaintiff[s], FLSA Collective Members[,] and Class Members."  (Agr. at p. 24).  However, at the time the Agreement was executed, counsel did not represent any future opt-in FLSA plaintiffs, nor do they or could they do so now.  Counsel thus did not and presently does not possess the authority to settle the FLSA claims of individuals who have not yet opted in to the action but later do so. Recognizing that fact, the Court cannot approve of a settlement that prospectively signs away those litigants' rights.

Third, the check-cashing structure proposed by the parties severely impairs the Court's ability to engage in a full Cheeks analysis because, under the proposed procedure, members of the collective would not opt in to the litigation until after the settlement has been approved and checks are sent.  Therefore, sufficient information on the members of the FLSA collective and the amount each is likely to recover would not be available until after final approval is granted.

Information as basic as the number of individual members in the collective and thus the likely individual or average rate of recovery is critical to the Court's ability to analyze the fairness of the recovery under <u>Cheeks</u>.  "Without so much as an estimate of any of that information, it is impossible for this Court to conduct even a preliminary assessment of the fairness of the proposed settlement."  <u>Marin v. Apple-Metro, Inc.</u>, No. 12 CV 5274, ECF No. 385 at 18–19 (citing <u>Douglas I</u>, 371 F. Supp. 3d at 84).  For that reason alone, "[t]he procedure set forth in the agreement—namely[,] that an individual opts in and simultaneously settles his or her FLSA claim by depositing a check—simply makes no sense in the context of <u>Cheeks</u>."  <u>Douglas I</u>, 371 F. Supp. 3d at 87.

Finally, the option for employees to not cash their checks and to therefore maintain their FLSA claims is all but illusory once an individual has foregone their opportunity to opt out of the Rule 23 class action.  <u>See</u> <u>Douglas II</u>, 381 F. Supp. 3d at 242.  Thus, this type of scheme essentially creates a penalty for refusing to release one's FLSA claims in the form of forfeiture of NYLL and common-law claims without compensation.  <u>Id.</u> at 243.  The Court cannot conclude that such an arrangement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching."  <u>Le v. Sita Info. Networking Computing USA, Inc.</u>, 2008 WL 9398950, at *1.

In sum, the Court holds that the proposed settlement structure violates Section 216(b)'s opt-in requirement and, as this Court has previously held, "is profoundly unfair and seriously misleading, especially given that the FLSA is a uniquely protective statute."  <u>Chen v. XpresSpa at Terminal 4 JFK LLC</u>, 2018 WL 1633027, at *6 (quoting <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d at 207).

"When presented with a settlement for approval, a district court's options are to (1) accept the proposed settlement; (2) reject the proposed settlement and delay proceedings to see if a different settlement can be achieved; or (3) proceed with litigation." Fisher v. SD Prot. Inc., 948 F.3d at 606 (citing Evans v. Jeff D., 475 U.S. 717, 727 (1986)).  Thus, if a court finds one or more provisions of an FLSA settlement agreement to be unreasonable, the court must reject the proposed settlement and cannot "rewrite contract provisions it finds objectionable." Id. at 605–06.  Here, because the Court finds that the proposed check-cashing structure is impermissible, it cannot grant preliminary approval of the overall settlement or conditionally certify the proposed hybrid collective/class action.[14]

V.   Other FLSA Issues

A.   Service Award and General Release

The Agreement provides for each named plaintiff and opt-in plaintiff to receive $5,000 and $2,500, respectively, as service awards.  (Agr. ¶ 3.2).  As in the case of class actions, see, e.g., Hyland v. Naviant Corp., No. 18 CV 9031, 2020 WL 6554826, at *3 (S.D.N.Y. Oct. 9, 2020), aff'd, 48 F.4th 110 (2d Cir. 2022), service awards are commonly awarded to named plaintiffs in collective actions, see, e.g., Summa v. Hofstra Univ., No. 07 CV 3307, 2012 WL 13046732 (E.D.N.Y. Feb 22, 2012).  However, unlike in the class action context, plaintiffs in

---

[14] The Court is aware of several post-Cheeks cases from this District and elsewhere that allowed the release of FLSA claims without any required act of opting-in or consenting to join the lawsuit, as well as several that allowed a check-cashing opt-in mechanism largely identical to that proposed here.  Beyond approving the settlement itself, however, these cases do not discuss whether check-cashing as an opt-in mechanism is a reasonable approach or consistent with the FLSA's requirements.  "This *sub silentio* practice does not make the structure sound," particularly in light of the growing body of caselaw concluding that collective action settlements that do not adhere to Section 216's requirements or adequately account for the rights of potential collective action members are impermissible.  Douglas II, 381 F. Supp. 3d at 244; see also id. (collecting cases wherein courts approved one-step FLSA settlements "using the parties' proposed orders" or "with little or no explanation"); Marin v. Apple-Metro, Inc., No. 12 CV 5274, ECF No. 385 at 16–17 (declining to follow several cases in which courts approved similar check-cashing schemes on the ground that "the majority of the caselaw on which plaintiffs rely involves little more than courts rubber-stamping proposed settlements without a detailed analysis or discussion of whether the procedure being employed complies with FLSA's requirements or results in a settlement that is fair and reasonable for the individual litigants).

FLSA actions ordinarily cannot agree to a non-mutual general release when settling their claims.

See Allen v. County of Nassau, 2023 WL 4086457, at *5 (citing Cheeks v. Freeport Pancake

House, Inc., 796 F.3d at 206)).

The Agreement claims that the service awards here are provided to named and opt-in

plaintiffs "in consideration for their work performed on behalf of the Class."  (Agr. ¶ 3.2).

Plaintiffs' Memorandum further justifies the payment of service awards, noting that, among

other things, named and opt-in plaintiffs "provided counsel with relevant documents and

information," bore the risks of being named in an employment action, and helped counsel draft

the complaints.  (Mem. at 7).  However, plaintiffs' Memorandum, when justifying the service

awards, omits any reference to the fact that pursuant to the Agreement, service award recipients

release "any and all claims" against the Released Entities.  (Agr. ¶ 4.1; see also Mem. at 7).  This

general release provision is impermissible, as courts in this Circuit have uniformly rejected the

inclusion of non-mutual general releases in FLSA settlements.  See, e.g., Allen v. County of

Nassau, 2023 WL 4086457, at *5.

To be clear, there is nothing problematic with service awards for named and opt-in

plaintiffs in the abstract, but the parties make no attempt to explain why the general release

included in the Agreement should be treated differently than any other non-mutual general

release proposed in an FLSA settlement.  At least some courts in this Circuit, including this

Court, have expressly disallowed such releases in exchange for incentive awards.  See Sanders v.

CJS Solutions Group, LLC, 17 CV 3809, 2018 WL 620492 (S.D.N.Y. Jan. 30, 2018); Marin v.

Apple-Metro, Inc., No. 12 CV 5274, ECF No. 385 at 24.  And for good reason, as neither the

language nor the reasoning of Cheeks and its progeny support the inclusion of a non-mutual

general release in exchange for a service award.  As this Court has previously explained, "[t]here

is no meaningful distinction between [such a proposal] and an individual FLSA settlement wherein the parties include a non-mutual general release on the grounds that the defendant is paying more than he or she would have if the plaintiff agreed only to a narrower release." Marin v. Apple-Metro, Inc., No. 12 CV 5274, ECF No. 385 at 24–25.  Thus, the parties are advised that while they are free to compensate the named and opt-in plaintiffs for their efforts,[15] should they renew their Motion at a later date, the Court will not approve of any non-mutual general release provision, even if included in exchange for incentive awards, "in the absence of any compelling argument or authority to the contrary."  Id. at 25.

       B.       Redistribution of Residual Funds

       As noted above, after the distribution of checks to class/collective members, the Agreement does not provide any mechanism for redistributing the funds from any uncashed checks to class/collective members but, rather, calls for all residual funds to revert to the defendants.  (Agr. ¶¶ 3.5(A), 3.5(B), 3.5(C), 3.5(F)).  Reversionary settlements are not inherently problematic in the context of an FLSA settlement.  See Marin v. Apple-Metro, Inc., No. 12 CV 5274, ECF No. 385 at 23 (requesting that the parties "provide a compelling justification for the reversionary aspects of the settlement" rather than rejecting the proposed settlement merely for the inclusion of a reversionary clause).  However, the lack of information on the size of the collective and the members' average rate of recovery makes it impossible to estimate the likely value of any potential reversion and how that may impact the overall fairness of the settlement.  Thus, should the parties renew their Motion, they should "provide the Court with, at the very least, some means of approximating the likely recovery for individual Collective Members," as

---

[15] Assuming that the awards do not eclipse the "average recovery to each member of the Collective," Chen v. XpressSpa at Terminal 4 JFK LLC, 2018 WL 1633027, at *4; see also In re AOL Time Warner ERISA Litig., No. 02 CV 8853, 2007 WL 3145111, at *3 (S.D.N.Y. Oct. 23, 2007), the amount of the proposed awards appears reasonable.

well as the likely size of the reversion to the defendants, "such as the likely average value of the initial checks and estimated averages, medians, and percentiles of total recovery per Participating Class Member based on different rates of participation." Id. at 19–20.

C.    Attorney's Fees and Costs

Ordinarily, a court reviewing a request for attorney's fees in connection with an FLSA settlement is required to examine the fee request for reasonableness, and the attorney(s) to whom the fee is to be paid must submit adequate documentation supporting the request.  See, e.g., Beckert v. Rubinov, No. 15 CV 1951, 2015 WL 6503832, at *2 (S.D.N.Y. Oct. 27, 2015); Fisher v. SD Prot. Inc., 948 F.3d at 600.  Courts in this Circuit have routinely found an award representing one-third of the settlement amount (after deduction of costs) to be reasonable, although frequently courts will also engage in a lodestar analysis to confirm the reasonableness of the fee request.  See Allen v. County of Nassau, 2023 WL 4086457, at *5 (collecting cases). Ultimately, the goal is to sufficiently compensate plaintiffs' counsel for the risk associated with taking on continent fees in FLSA cases without unduly deducting from the plaintiff's total recovery.  See Silva v. Miller, 307 F. App'x. 349, 351 (11th Cir. 2009) (noting that "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement").

Here, the Agreement calls on class counsel to "petition the Court for an award of attorneys' fees not to exceed Four Hundred Sixteen Thousand Dollars and Zero Cents ($416,000.00), as well as for reimbursement of counsel's actual litigation expenses and costs up to Twenty-Two Thousand Dollars and Zero Cents ($22,000.00)."  (Agr. ¶ 3.3).  The proposed attorney's fees are equal to approximately one-third of the total settlement amount.  As noted above, courts in this circuit have routinely deemed rewards of this size relative to the total

settlement amount reasonable, particularly when the Court can confirm the reasonableness of the award through a lodestar analysis.  However, neither plaintiffs' Motion nor any of its accompanying filings provide the Court with the information required to conduct a lodestar analysis.  Considering the sheer size of the proposed attorney's fees, the parties are advised that the Court cannot confirm the reasonableness of the award based on the information that the parties have offered thus far.

       D.     <u>Administrator's Fees</u>

The Agreement and Proposed Notice indicate that the settlement earmarks up to $60,000 of the total settlement amount as administrator's fees.  (Agr. ¶ 3.4; Proposed Notice ¶ 6).  However, plaintiffs' Memorandum and Proposed Order indicate that at the final fairness hearing, plaintiffs will petition the court to approve administrator's fees up to $25,000.  (Mem. at 7; Proposed Order ¶ 13).  The parties are advised that, should they renew their motion at a later date, they should ensure that these figures are consistent so that the Court may properly assess the reasonableness of the proposed administrator's fee.

VI.    <u>Issues Pertaining to the Proposed Notice</u>

Pursuant to the Federal Rules of Civil Procedure, when parties propose a settlement, the "court must direct notice [of the settlement] in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Under Rule 23(e)(1), the "[c]ourt has virtually complete discretion as to the manner of giving notice to class members."  <u>In re MetLife Demutualization Litig.</u>, 689 F. Supp. 2d at 345 (quoting <u>Handschu v. Special Servs. Div.</u>, 787 F.2d 828, 833 (2d Cir. 1986)).

In addition to notice of a proposed settlement, Rule 23 also either requires or permits courts to provide notice of the class proposed to be certified, depending on the type of class action proceeding.  <u>See</u> Fed. R. Civ. P. 23(c)(2).  In a Rule 23(b)(3) class action such as this, the

court "must direct . . . the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  The Rule further provides that notice to such classes must "concisely and clearly" state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Id.

In Eisen v. Carlisle & Jacquelin, the Supreme Court held that individual notice, as opposed to general published notice, is required by Rule 23(c)(2) for class members who are identifiable through reasonable effort.  417 U.S. at 173–76 (holding that "individual notice to identifiable class members is not a discretionary consideration" but rather, is an "unambiguous requirement of Rule 23"); Becher v. Long Island Lighting Co., 64 F. Supp. 2d at 177.  Notice is adequate if it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'"  Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 114 (quoting Weinberger v. Kendrick, 698 F.2d at 70).  Further, "[a]dequate notice is notice that 'may be understood by the average class member'" and "the standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 113–14.  Notice of a class action settlement satisfies due process if it "describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date,

time, and place of the final approval hearing." In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig., 330 F.R.D. at 58.

Here, the Agreement directs the Administrator to mail English and Spanish versions of the Proposed Notice to all class members, as identified through defendants' employee records. (Agr. ¶ 1.8). According to plaintiffs, the Proposed Notice "satisfies each of [the] requirements" of Rule 23(c)(2)(B) by describing (1) the terms of the settlement, (2) the allocation of attorney's fees, and (3) the "date, time, and place of the final approval hearing." (Mem. at 22). Plaintiffs assert that this information adequately puts class members on notice. (Id.)

Based on the information presently available, the Court finds that the overall structure and intent of the Proposed Notice is adequate with respect to class action claims. However, the Court notes a crucial inconsistency between the definition of the class in the Agreement and the Proposed Notice which would preclude the Court from approving the notice should the parties renew their motion at a later date. As noted above, the Agreement defines the class as "Named plaintiffs and all non-exempt employees who were employed by one or more of the Defendants from April 22, 2019 through the date of execution of the Agreement, who do not opt-out of the Litigation in accordance with the procedures set forth below." (Agr. ¶ 1.6). The Proposed Notice, however, defines the class as including individuals employed by defendants as far back as April 22, *2016*. (See Proposed Notice). Further, the parties are advised that the Proposed Notice misspells the undersigned's name. (Id. ¶ 2). These issues should be resolved should the parties renew the Motion.

Moreover, given the Court's disapproval of the proposed FLSA collective opt-in mechanism, the Court anticipates that the parties, should they choose to renew their motion at a later date, will make substantive changes to the Proposed Notice. As such, the Court need not

54

make a determination on the adequacy of the notice at this point with respect to the FLSA

collective action settlement.  However, in the interest of providing guidance, the parties are

advised that adequate notice of an FLSA collective action settlement must:  (1) inform putative

collective members of the collective action settlement, (2) explain the opportunity to opt-in and

consent to the settlement, (3) explain that by not opting in, putative collective members are not

bound by the terms of the Agreement with respect to their FLSA claims, (4) inform putative

collective members that they may be heard at the final fairness hearing whether or not they join

the settlement, and (5) explain that putative collective members may object to the Agreement at

the final hearing.  Marichal v. Attending Home Care Services, LLC, 432 F. Supp. 3d at 284.

VII.    Appointment of Class Counsel

Plaintiffs also ask this Court to appoint the the Law Office of Christopher Q. Davis,

PLLC, as class counsel.  (Mem. at 21).  In evaluating the adequacy of Class Counsel, Rule 23(g)

requires the Court to consider: (1) the work done by counsel in investigating the potential claims

in the case; (2) counsel's experience in handling similar class actions and other complicated

litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will

expend to represent the class.  Fed. R. Civ. P. 23(g).

Here, The Law Office of Christopher Q. Davis, as well as the attorneys at the firm who

are handling this case, Mr. Sweeney and Mr. Davis, have extensive experience litigating and

settling class and collective employment lawsuits.  (Sweeney Decl. ¶¶ 57–85).  Moreover,

plaintiffs' counsel has performed substantial work in this litigation by "identifying, investigating,

prosecuting, and settling the Class Members' claims."  (Mem. at 21).  Accordingly, based on the

information presently available, the Court finds that proposed Class Counsel satisfy the criteria

of Rule 23(g), and that it would be appropriate to appoint Mr. Sweeney and Mr. Davis as class

counsel should plaintiffs renew their Motion.

## CURING DEFECTS

In summary of the various holdings above, the parties are advised that if they renew their motion, they must cure the following defects.

With respect to the settlement as it relates to the proposed class, the parties should update their Memorandum to provide legal justification for a finding of procedural and substantive fairness under Rule 23(e)(2) as required by Moses v. New York Times Co., 79 F.4th 235.  In addition, the parties should specifically address the Agreement's release of the individual retaliation claims brought in the SST Action, provide further details on the claims excluded from the Agreement under section 4.1(C), and explain how these claims fit into the settlement and the class certification framework.  Lastly, counsel must provide the Court with all information needed to conduct a lodestar analysis in connection with counsel's fee request and, per Moses, to assess the substantive fairness of the settlement.  79 F.4th at 243–46, 256–57.[16]

With respect to the settlement as it relates to FLSA claims, the parties must adopt an opt-in mechanism which conforms to the procedural requirements of 29 U.S.C. § 216(b) as described above.  See pp. 41–48 supra.  The post-fairness hearing check-cashing opt-in mechanism does not suffice.  The revised opt-in mechanism must include a method of providing notice to extant and putative collective members which would enable them to opt in to the active litigation and consent to the settlement prior to a final fairness hearing.  The parties must also remove from the Agreement the non-mutual general release in section 4.1(C).  In order for the Court to properly assess the fairness of the FLSA settlement, the parties must provide greater details on the size of the collective and an approximation of the likely recovery for individual collective members.

---

[16] The Court also requires this information to assess the fairness of the settlement as it relates to the FLSA claims.

The parties must also correct the inconsistency throughout their filings regarding the Administrator's fees allowed by the Agreement.

Lastly, with respect to the Proposed Notice, the parties must (1) correct the definition of the class/collective to reflect the dates specified in the Agreement; (2) ensure that the notice accurately describes any revised FLSA opt-in mechanism in accordance with the notice requirements as laid out under heading VI; and (3) correct the spelling of the undersigned's name.

The parties are advised that any changes to the Agreement could impact the foregoing analysis and may lead the Court to alternative findings and/or conclusions.  In other words, curing these defects, alone, will not guarantee that the Court will issue an order granting a renewed motion.

<u>CONCLUSION</u>

As set forth above, the Court holds that: (1) the check-cashing opt-in mechanism proposed by the Agreement does not conform to the requirements of 29 U.S.C. § 216(b); (2) the non-mutual general release clause is impermissible as part of an FLSA settlement; and (3) the parties have not supplied sufficient information for the Court to make a preliminary assessment of the fairness of the Agreement for purposes of <u>Cheeks</u> or Rule 23 of the Federal Rules of Civil Procedure.  The Court therefore DENIES the Motion for preliminary approval of a proposed settlement and conditional certification of a hybrid collective/class action, without prejudice and with leave to renew in a manner that complies with this Order.

By **September 30, 2024**, the parties shall file a joint status report indicating whether they intend to revisit settlement or proceed with this action.  If the latter, the parties shall propose dates for any remaining pre-trial deadlines.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 27, 2024

                    /s/ Cheryl L. Pollak
                    Cheryl L. Pollak
                    United States Magistrate Judge
                    Eastern District of New York